| | |
|---|---|
| AMERICAN ARBITRATION ASSOCIATION<br>MULTIEMPLOYER PENSION PLAN TRIBUNAL<br>------------------------------------------------------------------------x<br>In the Matter of the Withdrawal Liability Arbitration<br>Between<br><br>**SOFCO ERECTORS, INC.,**<br>                    Petitioner,<br><br>      and<br><br>**OHIO OPERATING ENGINEERS PENSION FUND,**<br>                    Respondent.<br>------------------------------------------------------------------------x | AAA Case No.<br>01-18-0001-3790<br><br>JS Case No. 4510<br><br>**OPINION AND<br>AWARD ON<br>MOTIONS FOR<br>SUMMARY<br>JUDGMENT** |

**Before JOHN E. SANDS, Impartial Arbitrator**

## OPINION

### Introduction

       This withdrawal liability proceeding arises under the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), which amended the Employee Retirement Income Security Act of 1974 ("ERISA"). Briefly, MPPAA requires a contributing employer that completely withdraws from a multiemployer pension plan to pay its proportional share of the plan's unfunded vested benefits ("UVB") calculated in accordance with MPPAA's terms as of the end of the plan year preceding the plan year of complete withdrawal. Because the parties in this case operate in the building and construction industry, ERISA Section 4203(b)'s

construction industry exception applies. In that industry, a complete withdrawal occurs under Section 4203(b)(2)(B) only if an employer that ". . . ceases to have an obligation to contribute under the plan

> (i) continues to perform work in the jurisdiction of the collective bargaining agreement of the type for which contributions were previously required, or
>
> (ii) resumes such work within 5 years after the date on which the obligation to contribute under the plan ceases, and does not renew the obligation at the time of the resumption."

In addition, because this case involves two additional assessments for partial withdrawals in earlier plan years, the ERISA Section 4208(d)(1) applies. Under that section, a construction industry employer

> . . . is liable for a partial withdrawal only if the employer's obligation to contribute under the plan is continued for no more than an insubstantial portion of its work in the craft and area jurisdiction of the collective bargaining agreement of the type for which contributions are required.

The questions in this case involve (a) whether the Fund correctly assessed both partial and complete withdrawal liability arising out of the employer's reduction of contributions in plan years ending July 31, 2011 and July 31, 2012 and its cessation of contributions in plan year ending July 31, 2017, (b) whether the Fund correctly used the employer's pre-2004 contribution history in calculating the assessments at issue, and (c) whether the Fund's actuary correctly used the Segal Blended interest rate assumption rather than the Fund's funding

rate assumption in making that calculation. Because no issues of material fact exist, the parties agreed to present their arguments to me on cross motions for summary judgment.

**Facts**

Petitioner Sofco Erectors, Inc. ("Sofco") is an erection company that focuses on steel and precast building construction. Prior to the events at issue, Sofco had for many years been signatory to collective bargaining agreements between Associated General Contractors of Ohio ("ACG") and International Union of Operating Engineers Local 18 requiring contributions to the Fund for all hours paid to each covered employee. Over that entire period of time Sofco contributed to the Fund under the name Sofco Erectors, Inc. and with the same employer code number, 6794-5.

Also prior to the events at issue, Sofco had hired and contributed to the Fund for Local 18 crane operators as well as for forklift operators and a shop worker.[1] At some point prior to 2014 Sofco stopped hiring crane operators and used operators employed and supplied by its contracted crane companies. The

---

[1] Jon Allen was the Local 18 member whom Sofco employed to perform maintenance and repair work in its shop and for whom it made contributions to the Fund. After his retirement, Sofco hired Jon's son, Jason Allen, also a Local 18 member, to perform the same shop work; and it made contributions to the Fund for all his paid hours.

only Local 18 employees for whom Sofco made contributions thereafter were forklift operators and one shop worker. That resulted in reductions of Sofco's contributions to the Fund during the three-year testing periods described in ERISA Section 4205 that the Fund found justified assessing partial withdrawal liability

- for plan year ending July 31, 2011, in the amount of $344,627 based on its finding that the ratio of hours to maximum average contribution base units ("CBUs") during the three-year testing period of 9% in 2011, 4% in 2010, and 13% in 2009, and

- for plan year ending July 31, 2012 in the amount of $111,358 based on its finding that the ratio of hours to maximum average CBUs during the three-year testing period of 18% in 2012, 9% in 2011, and 4% in 2010.

The last collective bargaining agreement obligating Sofco to contribute to the Fund for covered employees' paid hours was the May 8, 2013 through April 30, 2017 ACG Building Agreement. Prior to and during the term of that agreement, disputes arose with Local 18 concerning Sofco's occasional assignment of forklift operation to members of Ironworkers Local 172, with which Sofco had a collective bargaining agreement that did not expressly cover that work. Based on Local 18's ACG Building Agreement's express provisions covering forklift work, Local 18 opposed those assignments and grieved them.

Sofco and Local 18 settled one such grievance on March 24, 2014 with a Settlement Letter requiring Sofco to hire a Local 18 apprentice to operate forklifts and perform other duties prescribed in the ACG Building Agreement for apprentices.

According to the deposition testimony of Sofco President and COO Dan Powell, Local 18's aggressive efforts to get a bigger percentage of forklift work were costing time and expense that Sofco decided to avoid by terminating its participation in the Local 18-ACG Building Agreement effective on its expiration, April 30, 2017. That action occurred, and Sofco's obligation to contribute to the Fund permanently ceased, as of that date. Sofco did, however, continue to have its Ironworkers Local 172 employees perform forklift work and continue to employ Jason Allen to do shop work, for both of which it had been required to contribute to the Fund for all paid hours.

Based on permanent cessation of Sofco's obligation to contribute and its continuing to perform covered work within Local 18's jurisdiction after termination of the ACG Building Agreement, the Fund determined that Sofco had completely withdrawn from the Fund within the meaning of ERISA Section 4203(a)(2). It accordingly assessed complete withdrawal liability in the amount of

$368,315. Sofco timely requested review and commenced this arbitration proceeding to challenge the three assessments at issue.

**Arguments**

On these facts Sofco's Motion for Summary Judgment argues (a) that the Fund's complete withdrawal liability assessment is clearly erroneous because Sofco did not continue work in Local 18's jurisdiction after its obligation to contribute ceased; (b) that the Fund's partial withdrawal liability assessment is clearly erroneous because (i) it used the incorrect statutory definition of partial withdrawal, (ii) Sofco's contributions during the plan years in question were not "insubstantial," and (iii) its crane contractors continued to contribute to the Fund for their Local 18 crane operators so there was no decrease of the Fund's contribution base; (c) that the Fund's withdrawal liability calculations are wrong because (i) it unlawfully considered the pre-2004 contribution history of Sofco's predecessor, and (ii) it unlawfully used the Segal Blend instead of its funding interest rate, and (d) that I should therefore grant its Motion for Summary Judgment, set aside the withdrawal liability assessments at issue, order the Fund to return Sofco's quarterly payments with interest, and award Sofco its fees and costs in this matter.

The Fund replies (a) that Sofco's proofs fail to meet its burden of proof that any determination the Fund made was unreasonable or clearly erroneous or that the actuarial assumptions and methods used were, in the aggregate, unreasonable; (b) that the ACG Building Agreement clearly required contributions for forklift operation as well as for all paid hours regardless of whether that work is covered under the agreement; (c) that Local 18 did not, nor could it, waive Sofco's obligation to make contributions to the Fund; (d) that Ironworkers have no jurisdictional claim to forklift operation; (e) that the Fund's complete and partial withdrawal liability assessments were not clearly erroneous because (i) the undisputed facts meet ERISA Section 4203(b)'s criteria for complete withdrawal in the building and construction industry; (ii) Sofco's contributions during the three-year testing periods continued "for no more than an insubstantial portion of its work in the craft and area jurisdiction of the collective bargaining agreement of the type for which contributions [were] required," and Sofco's subcontracting of crane operation is no defense to partial withdrawal liability; (f) Sofco has failed to bear its burden of proof that the Fund's determination was clearly erroneous that, both before and after the 2004 transfer of ownership, Sofco continued as the same operation with the same management and overlapping owners so that the Fund properly included Sofco's pre-2004 contribution history in its calculations; (g) that

Sofco failed to bear its burden of proof that the Fund's actuary's use of the Segal Blend was "based . . . on a combination of methods and assumptions that falls outside the range of reasonable actuarial practice," and (h) that I should accordingly deny Sofco's Motion for Summary Judgment and require Sofco to pay each of the three assessments at issue.

For its part, the Fund's Motion for Summary Judgment argues (a) that the Fund properly assessed complete withdrawal liability because (i) Sofco was obligated to contribute for Local 18 members' forklift and shop work; (ii) that obligation ceased completely effective April 30, 2017, and (iii) Sofco continued to perform that formerly covered work with employees for whom it has no obligation to contribute; (b) that the Fund properly assessed partial withdrawal liability because Sofco's obligation to contribute "continued for no more than an insubstantial portion of its work" in the collective bargaining agreement's craft and area jurisdiction; (c) that Sofco cannot ignore its pre-2004 contribution history because "old" Sofco and "new" Sofco are essentially the same entity and operation with the same management and overlapping ownership operating under the same Local 18-ACG Building Agreement and making contributions with the same contractor code number for the same covered employees performing the same work, and (d) that I should accordingly grant the Fund's Motion for Summary

Judgment and require Sofco to pay each of the three assessments in full for a total of $824,300.[2]

Sofco replies (a) that it timely raised the Segal Blend issue in its Supplemental Request for Review; (b) that the Fund's complete withdrawal liability assessment is clearly erroneous because no contributions were required for shop work or the forklift work Sofco assigned to Ironworkers; (b) that the Fund's partial withdrawal liability assessments are clearly erroneous because (i) the Fund incorrectly calculated the amount of decline in contributions based on a three-year average rather than determining whether the contributions were insubstantial for each of the three years, and (ii) "insubstantial portion" must mean something more than a 70% decline, and Sofco's contributions were more than "insubstantial;" (c) that Sofco, an asset purchaser, is not liable for its predecessor's contribution history, and (d) that I should accordingly deny the Fund's Motion for Summary Judgment and grant Sofco's Motion for Summary Judgment.

On the entire record before me, comprising the parties' motion papers and supporting exhibits, I must grant the Fund's Motion for Summary Judgment and deny that of Sofco. I reach that conclusion for the following reasons.

---

[2]The Fund's Motion for Summary Judgment does not address the Segal Blend issue, but its reply to Sofco's Motion for Summary Judgment does.

**Rationale**

First, ERISA Section 4221(a)(3) establishes the standard of review in arbitration proceedings to challenge withdrawal liability determinations:

> (A) For purposes of any proceeding under this section, any determination made by a plan sponsor under [ERISA] sections [4201] through [4219] of this title and section [4225] of this title is presumed correct unless the party contesting the determination shows by a preponderance of the evidence that the determination was unreasonable or clearly erroneous.
>
> (B) In the case of the determination of a plan's unfunded vested benefits for a plan year, the determination is presumed correct unless a party contesting the determination shows by a preponderance of evidence that—
>
> > (i) the actuarial assumptions and methods used in the determination were, in the aggregate, unreasonable (taking into account the experience of the plan and reasonable expectations), or
> >
> > (ii) the plan's actuary made a significant error in applying the actuarial assumptions or methods.

Here Sofco is the party contesting the Fund's determinations at issue and, to succeed, it must make the required showings by a preponderance of the evidence. On this record, I find it has failed to bear that burden of proof as to all relevant Fund determinations.

Second, Sofco failed to prove by a preponderance of the evidence that the Fund's determination was clearly erroneous that a complete withdrawal had occurred effective April 30, 2017. As noted above, ERISA Section 4203(b)(2)

sets forth the criteria for a complete withdrawal to have occurred in the building and construction industry, all of which the Fund reasonably found Sofco to have met:

- Prior to that date Sofco had an obligation to contribute and did contribute under the Local 18-ACG Building Agreement for all paid hours worked by Local 18 members who performed forklift operation and shop work. The Agreement expressly names forklift operation as covered work, and Sofco could not have lawfully contributed to the Fund for either Jon or Jason Allen without having had such an obligation. (See Labor Management Relations Act, Section 302(c)(5).)
- That obligation ceased upon Sofco's termination of its participation in the ACG Building Agreement effective April 30, 2017.
- Sofco employees continued to perform that work, which was within the collective bargaining agreement's jurisdiction and for which contributions were previously required.

Sofco's proofs fail to persuade me otherwise. The work at issue was within the collective bargaining agreement's jurisdiction, which Local 18 continually acted to enforce through job actions and the grievance procedure. Neither was there a waiver of that jurisdiction, nor could Local 18 legally waive

the Fund's ability to assert it. That having been the case, I have neither authority nor disposition to decide the IUOE-Ironworkers work jurisdiction issue. It suffices to say that neither Sofco nor the Ironworkers timely challenged Local 18's assertion of jurisdiction. No one disputes that Sofco's obligation to contribute to the Fund ceased or that Sofco employees continue to perform the subject work, which the Fund reasonably found to have been in the collective bargaining agreement's jurisdiction. I accordingly find that the Fund properly determined a complete withdrawal to have occurred.

Third, Sofco failed to prove by a preponderance of the evidence that the Fund's determination was clearly erroneous that a partial withdrawal had occurred for plan years ending July 31, 2011 and July 31, 2012. As noted above, ERISA Section 4208(d)(1) sets forth the criteria for a partial withdrawal to have occurred in the building and construction industry, which the Fund reasonably found Sofco to have met. That section imposes partial withdrawal liability on a building and construction industry employer ". . . only if the employer's obligation to contribute under the plan is continued for no more than an *insubstantial portion* of its work in the craft and area jurisdiction of the collective bargaining agreement of the type for which contributions are required." (Emphasis added.) The Fund determined that standard had been met by these data for the plan years at issue:

- for plan year ending July 31, 2011, the ratio of hours to maximum average contribution base units ("CBUs") during the three-year testing period of 9% in 2011, 4% in 2010, and 13% in 2009, and

- for plan year ending July 31, 2012 the ratio of hours to maximum average CBUs during the three-year testing period of 18% in 2012, 9% in 2011, and 4% in 2010.

Sofco argues that determination to have been clearly erroneous because "insubstantial" for each of the three testing years must not exceed the 2% figure defined as "insubstantial" by the IRS for a different purpose in its Publication 1771. The Fund disagrees, citing the legislative history of Congress's refusal to adopt the 5% figure pressed by building and construction industry employers and PBGC's Opinion Letter 95-2 expressly declining to define any given percentage of work to constitute an "insubstantial portion." In doing so, PBGC recognized that Congress had enacted specific numerical thresholds and tests governing withdrawal liability determinations in other ERISA sections but not here. It concluded,

> Accordingly, such fact-specific determinations are the responsibility of the plan sponsor. ERISA § 4202, 29 U.S.C. § 1382. Any dispute between the plan sponsor and the employer over the validity of that determination are to be resolved first through arbitration and then by district court review.

I find Sofco's argument unpersuasive. A 2% figure would essentially write partial withdrawal liability for building and construction industry employers out of MPPAA, and Congress itself declined to specify a 5% figure. It appears to me that area of "insubstantial" must lie between ERISA Section 4205(b)(1)(A)'s 30% figure and the 5% figure that Congress declined to adopt. None of the figures on which the Fund based its determination, which range from a low of 4% to a high of 18%, exceed what I find to be the "insubstantial" threshold appropriate to the circumstances of this case.[3] And Sofco has failed to bear its burden of convincing me otherwise by a preponderance of the evidence.

Fourth, Sofco failed to prove by a preponderance of the evidence that the Fund's determination was clearly erroneous to include Sofco's pre-2004 contribution history in its calculation of withdrawal liability. Sofco contends that "old" Sofco and "new" Sofco were two wholly different entities with independent ownership. Its proofs, however, were insufficient to persuade me that the Fund's contrary determination was clearly erroneous. Both before and after the 2004 asset transfer Sofco was signatory to the ACG Building Agreement and contributed to the Fund as "Sofco Erectors, Inc." with the same employer code

---

[3] Indeed, Sofco's President and COO's acknowledged at his deposition that forklift work is *not* "a substantial portion of the work that is done by Sofco Erectors."

number. It continued without change as the same operation using the same equipment and assets and with the same Local 18 personnel, nearly identical management, and overlapping ownership. It never advised the union or the Fund that a sale of assets had occurred so that the Fund fiduciaries could exercise due diligence to consider any ERISA Section 4204 issues that may have been relevant at the time. Moreover, significant differences appear between what Sofco offered the fund in its Request for Review and what its Motion for Summary Judgment offers. And, most important to me, "new" Sofco is clearly "old" Sofco's successor employer with respect to its collective bargaining and employee benefit obligations. Under the facts of this case, I find the Fund reasonably determined to include Sofco's pre-2004 contribution history in its withdrawal liability calculations.

Fifth, Sofco failed to prove by a preponderance of the evidence that the Fund actuary improperly used the Segal Blend to calculate the withdrawal liability assessments at issue. In support of its challenge Sofco adopts the reasoning of United States District Judge Robert Sweet's March 26, 2018 decision reversing a withdrawal liability arbitrator's approval of the Segal Blend in *New York Times v. Newspaper & Mail Deliverers'–Publishers' Pension Fund*, 303 F.Supp. 3d 236 (S.D.N.Y. 2018). Judge Sweet's opinion, however, is not the only

relevant authority. On July 3, 2018 United States District Court Judge Kevin McNulty reached the opposite conclusion in *Manhattan Ford Lincoln, Inc. v. UAW Local 259 Pension Fund*, 331 F.Supp. 3d 365 (D.N.J. 2018). And PBGC's *amicus* brief to the Second Circuit in the *New York Times* appeal sides with the *Manhattan Ford Lincoln* analysis.

Here the Fund's actuary's withdrawal liability valuation report explained his having a blend of the plan funding rate, 7.25% (to the extent the vested benefits are matched by the market value of plan assets on hand), and the PBGC Interest Rates as of July 31, 2016 (the end of the plan year preceding the withdrawal date), 2.50% for the first 20 years and 2.85% after 20 years (to the extent the vested benefits are not matched by plan assets):

> The portion of the vested benefits that is matched by readily available assets is determined by comparing the total present value of vested benefits plus expenses –at PBGC rates– with the total market value of assets; each vested benefit is treated as covered by assets to the same extent as all other vested benefits.
>
> The discount rate [for withdrawal liability purposes] is based on a blend, which includes rates selected based on estimated annuity purchase rates for benefits being settled, because withdrawal liability is a final settlement of an employer's obligations to the Plan. For benefits that could be settled immediately, because assets on hand are sufficient, the annuity purchase rates are those promulgated by PBGC under ERISA Sec. 4044 for multiemployer plans terminating by mass withdrawal on the measurement date. For benefits that cannot be settled immediately because they are not

currently funded, the calculation uses rates equal to the discount rate used for plan funding calculations.

And Fund actuary Daniel Ciner so testified in his deposition:

> The rationale is that an employer leaving the plan is essentially making a final settlement and the way you settle a multiemployer pension plan is by using those – is by doing an annuity purchase on behalf of all the participants, and the interest rates published by PBGC approximate annuity purchase rates.
>
> And then to the effect that the plan doesn't have enough assets to pay for the annuitized liabilities, the excess is considered funded over the long term, so a long-term interest rate is used and that's why there's a blend. So to the effect that there's assets used, the liability's based on PBGC rates and, if it's not funded, you use the funding interest rates.

This blending strategy balances risk with respect to future investment performance to address unfunded vested benefit liability and the certainty of current PBGC rates to address vested benefit liability covered by the market value of assets on hand. Not only does it reflect accepted actuarial practice, it accords with PBGC Opinion Letter 86-24, which reads, in relevant part:

> There is no requirement that the actuarial assumptions used to determine withdrawal liability be the same as those used for purposes of section 412 of the Code. Section 4213(b) of ERISA states merely that
>
>> [i]n determining the unfunded vested benefits of a plan for purposes of determining an employer's withdrawal liability . . ., the plan actuary *may* . . . rely on the most recent complete actuarial valuation used for purposes of section 412 of the . . . Code . . . .

(Emphasis supplied.) This is a permissive, not a mandatory, provision. Thus, the fact that the assumptions used to compute withdrawal liability are not the same as those used under section 412 of the Code does not of itself make those assumptions improper.

Section 4213(a) of ERISA permits the PBGC to issue regulations prescribing actuarial assumptions to be used in calculating withdrawal liability. No such regulations have been issued. In the absence of such regulations, section 4213(a) requires simply that

> [w]ithdrawal liability . . . shall be determined by each plan on the basis of . . . actuarial assumptions and methods which, in the aggregate, are reasonable (taking into account the experience of the plan and reasonable expectations) and which, in combination, offer the actuary's best estimate of anticipated experience under the plan . . . [*Id.*, pp. 3-4.]

The actuary's "anticipated experience under the plan" here included his judgments described above, and, in my mind, they accord with the premise of Judge McNulty's analysis:

> . . . that protection of Plan Participants, so long as it reflects professional actuarial judgments and not the self-interested bias of the Plan itself . . . is a permissible, indeed a paramount goal. [Citations omitted.]

ERISA Section 4221(a)(3)(B) places the burden of proof squarely on the party contesting a Fund's determination of UVB for a plan year, here Sofco, to show by a preponderance of the evidence that

> (i) the actuarial assumptions and methods used in the determination were, in the aggregate, unreasonable (taking into account the experience of the plan and reasonable expectations), or

(ii) the plan's actuary made a significant error in applying the actuarial assumptions or methods.

Sofco's assertion of Judge Sweet's reasoning in *New York Times* utterly fails to meet that standard. The record before me amply supports my conclusions that Mr. Ciner's actuarial assumptions and methods used in calculating Sofco's withdrawal liability were, in the aggregate, reasonable (taking into account the experience of the plan and reasonable expectations) and that he made no significant error in applying the actuarial assumptions or methods.

By reason of the foregoing, I issue the following

## AWARD

A. Respondent's Motion for Summary Judgment is granted, and Sofco must pay each of the three assessments in full for a total of $824,300.

B. Petitioner's Motion for Summary Judgment is denied.

Dated: Dated: April 29, 2019
Roseland, New Jersey

                        JOHN E. SANDS
                        Impartial Arbitrator

## ACKNOWLEDGMENT

STATE OF NEW JERSEY)
                            >ss.:
COUNTY OF ESSEX    )

        On April 29, 2019, JOHN E. SANDS, whom I know, came before me and acknowledged that he had executed the foregoing as and for his Opinion and Award in the above-captioned matter.

_____
Hilda M. Cortes-Rivera
A Notary Public of New Jersey
My Commission expires October 10, 2023