## AMERICAN ARBITRATION ASSOCIATION

| | | |
|---|---|---|
| **Sofco Erectors, Inc.,** | : | |
| | : | |
| Claimant, | : | AAA Case No. 01-18-0001-3790 |
| | : | |
| v. | : | Arbitrator John E. Sands |
| | : | |
| **Ohio Operating Engineers Pension Fund,** | : | |
| | : | |
| Respondent. | : | |

## THE OHIO OPERATING ENGINEERS PENSION FUND'S
## MOTION FOR SUMMARY JUDGMENT

**I.      INTRODUCTION**

The Ohio Operating Engineers Pension Fund's (the "Pension Fund") assessments of withdrawal liability against Sofco Erectors, Inc. ("Sofco") were warranted under the law and the facts. The information and arguments presented to the Pension Fund by Sofco through its Requests for Review and the evidence produced by Sofco in this litigation are insufficient to allow Sofco to meet its burden to have the Fund's assessments set aside. The two assessments of partial withdrawal liability and the assessment of complete withdrawal liability must be upheld and enforced in the amounts calculated by the Fund's actuaries at Segal.

For decades Sofco was a party to a series of collective bargaining agreements with the International Union of Operating Engineers, Local 18 ("Local 18" or the "Union"). Under these collective bargaining agreements, Sofco was obligated to make contributions to the Pension Fund for all hours paid to employees covered by the agreements.

After decades of participation, Sofco's level of contributions declined dramatically; Sofco continued contributions only on behalf of forklift operators and a single shop employee. These continued contributions constituted an insubstantial portion of Sofco's work and of its prior level of contribution to the Fund. As a result of the precipitous drops in contributions, the Fund assessed

partial withdrawal liability for the plan years ending on July 31, 2011 ($344,627) and July 31, 2012 ($111,358).

In 2017, Sofco's obligation to contribute to the Pension Fund ceased by virtue of Sofco's decision to terminate its collective bargaining agreement with Local 18. However, Sofco continued to perform forklift work and to employ the same shop employee following the termination of the CBA. While the covered work continued, no contributions were paid to the Fund. As Sofco had completely withdrawn from the Pension Fund, it was assessed withdrawal liability for a complete withdrawal in the plan year ending July 31, 2017 ($368,315).

The first issue for the Arbitrator is whether Sofco completely withdrew from the Pension Fund under the construction industry exception contained in 29 U.S.C. §1383(b). It did.

Sofco has been a party to the CBA and has made contributions to the Pension Fund since at least the 1980s. In the years immediately preceding 2017, Sofco hired members of Local 18 to perform forklift and shop work. Historically, Sofco had also employed Union operating engineers as crane operators, but had discontinued that practice a number of years preceding its decision to terminate the CBA. Sofco undeniably continues to perform that work today – work for which contributions had previously been required – and is therefore liable for complete withdrawal liability under the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"). Second, the dramatic declines in contributions triggered partial withdrawals in 2011 and 2012.

II.     **FACTUAL BACKGROUND**

    A.     **The Pension Fund**

The Pension Fund is a defined benefit multiemployer pension plan within the meaning of ERISA 3(37), 29 U.S.C. §1002(37). The Pension Fund was jointly established by signatory employers and Local 18 and is jointly-trusteed by those entities as required by the Taft-Hartley Act. The Pension Fund provides pension and certain disability benefits to participants and their beneficiaries. The Trustees of the Pension Fund are fiduciaries of the Pension Fund under ERISA

402(a), 29 U.S.C. §1102(a). (Affidavit of Carol Wilson ¶ 4) (hereinafter "Wilson Aff. ¶ __.").[1]

### B. The Collective Bargaining Agreement

The Pension Fund is a third-party beneficiary to the collective bargaining agreement (the "CBA") between the AGC of Ohio and Local 18.  Most recently, Sofco Erectors, Inc. was a party to the AGC Building Agreement dated May 8, 2013 through April 30, 2017.  (Deposition of Dan Powell, p. 20, Ex. 3) (hereinafter "Powell Dep. __").[2]  Article I defines the scope of the CBA:

#### GEOGRAPHICAL JURISDICTIONAL AREA

1. The provisions of this Agreement shall govern employment of and conditions under which employees shall work and rates of pay they shall receive on work in Building Construction in the following geographical area.

2. All counties in the State of Ohio except Ashtabula, Cuyahoga, Erie, Geauga, Huron, Lake, Medina, Lorain, Columbiana, Mahoning, and Trumbull, and including Boone, Campbell, Kenton, and Pendleton counties in Kentucky.

#### DEFINITION OF BUILDING CONSTRUCTION

3. **"Building Construction"** work is defined as the erection and construction of building structures, including modifications thereof, or additions or repairs thereto intended for use for shelter, protection, comfort or convenience, and demolition of same. Building Construction shall also include the excavation and foundations for Building Construction.

The CBA requires signatory employers to hire operating engineers to perform work within the jurisdiction of the Union.  Article II states as follows:

10. **Jurisdiction of Work** – In accordance with the terms of this Agreement, the Employer shall employ Operating Engineers for the erection, operation, assembly and disassembly and **maintenance and repair** of the following construction equipment regardless of motive power:  Air Compressors, Batch Plants, Boilers, Cableways, Derricks, Finishing Machines, Pumps, Trucks, Crawlers, Locomotive and Tower Cranes, Concrete Mixers and Concrete Mixing Plants, Hoes, Shovels, Pile Drivers, Tractors, Scrapers, Endloaders, Hoists and all like equipment…**It is further understood that all equipment for which classifications and wages have been established in this Agreement…shall be manned, when operated on the job site, by a member of the [Union].**

(Powell Dep., Ex. 3, CBA Art. II ¶10) (emphasis added).

---

[1] The Affidavit of Carol Wilson is attached hereto as Exhibit A.
[2] The cited pages and exhibits from the Deposition of Dan Powell are attached hereto as Exhibit B.

Relevant to this matter, the CBA assigns classifications and wage rates to the operation of forklifts in at least six locations. (Powell Dep. 37, Ex. 3, CBA pp. 53, 70, 73, 78, and 82). Because classifications and wages rates are established for forklift operators, Paragraph 10 of the CBA designates forklift work as part of the Union's jurisdiction. Additionally, Paragraph 10 also designates maintenance work performed on covered equipment, including forklifts and cranes, as within the Union's jurisdiction.

Employer signatories to the CBA are required to make contributions to the Pension Fund for all hours paid to employees who perform any covered work. Specifically, Paragraph 43 of the CBA states that "Fringe benefit contributions shall be paid at the following rates for all hours paid to each employee by the Employer under this Agreement which shall in no way be considered or used in the determination of overtime pay." (Powell Dep. Ex. 3 ¶ 43). The Court of Appeals for the Sixth Circuit has held this exact language to require employers to make contributions for all hours paid to employees, regardless of whether that work is "covered" under the CBA. *See, e.g.*, *Bunn Enters. v. Ohio Operating Eng'rs Fringe Benefit Programs*, 606 Fed. App'x 798, 804 (6th Cir. 2015) ("[W]e find that the CBA unambiguously requires employer signatories to contribute the appropriate benefits contributions for all hours worked by their employees, regardless of whether those hours are 'covered' under the contract.").

### C. Sofco Erectors, Inc.

Sofco is an erection company, focusing on steel and precast building construction. (Powell Dep. 15). Sofco has approximately 150 employees. (Powell Dep. 16). Sofco Erectors, Inc. has been making contributions to the Pension Fund since at least the 1980s, pursuant to the CBA and predecessor agreements with the Union. Wilson Aff. ¶ 2, Ex. 1.

As noted above, the CBA required Sofco to hire members of Local 18 to operate forklifts and to maintain and repair covered equipment. Sofco further had a concomitant obligation to make contributions to the Pension Fund based upon all hours paid to employees performing such work.

4

(Powell Dep. Ex. 3 ¶ 10, 43.)

Consistent with its obligations under the CBA, Sofco hired Local 18 members (Group C-18) Forklift Operators. Sofco's own records establish that in the years 2014-2017 Sofco hired Local 18 operating engineers to operate forklifts and paid contributions to the Pension Fund on behalf of these employees. (Powell Dep. 33, Ex. 12). Furthermore, for many years Sofco employed Jon Allen, a Local 18 member, to perform maintenance and repair work in its shop under the CBA. (Powell Dep. 35). Upon Jon Allen's retirement, Sofco hired Jason Allen, also a Local 18 member (and Jon's son), to perform the same shop work. (Powell Dep. 32). Contributions were paid to the Pension Fund for both Jon and Jason Allen. (Powell Dep. Ex. 12).

Historically, Sofco had also employed Local 18 members as crane operators, but years ago Sofco discontinued employing crane operators. (Powell Dep. 30). As a result, from 2014 to 2017 the only Local 18 members Sofco employed were the forklift operators and the shop employees detailed above. (Powell Dep. Ex. 12). The work these employees performed was not a substantial portion of Sofco's work. (Powell Dep. 77). Much of the forklift work was not even full-time. (Powell Dep. 35-36).

In Central Ohio, Sofco also had a collective bargaining agreement with Ironworkers Local 172. (Powell Dep. 81, Ex. 15) Sofco's agreement with Local 172 does not identify forklift operation as work for Ironworkers. (Powell Dep. Ex. 15). Nonetheless, Sofco would at times assign an Ironworker to operate a forklift on a job site. For years, Local 18 had consistently taken the position that operating engineers must perform the forklift work. (Powell Dep. 20-23). Local 18 had filed grievances to require Sofco to utilize operating engineers for forklift work. (Powell Dep. 27, Ex. 2). Those grievances were resolved in favor of Local 18, with Sofco agreeing to hire operating engineers. (Powell Dep. 27, 100-101, Ex. 2; Deposition of Thomas Byers Dep. 80-93, Exs. Q-Y

5

(hereinafter Byers Dep __.").[3]

Conversely, the Ironworkers Union never filed a grievance when Sofco assigned forklift work to operating engineers. (Powell Dep. 43). The Ironworkers never filed an unfair labor practice charge or initiated a 10-k proceeding contending that forklift work should be assigned to Ironworkers. (Powell Dep. 44). This is not surprising given that Local 18's CBA explicitly covers forklift operation and Local 172's contract contains no mention of forklift work. In fact, a written agreement between the Ironworkers International Union and the International Union of Operating Engineers reflected that they agreed that forklift operation is within the jurisdiction of operating engineers. (Powell Dep. Ex. 16; Byers Dep. 133, 136-139, Ex. EE.).

Ultimately, Sofco tired of Local 18's efforts to enforce the terms of the CBA. Frustrated by Local 18's efforts to make sure that its members were assigned to forklift work, Sofco terminated the CBA with Local 18. (Powell Dep. 20-23, Ex. 1).

Sofco's obligation to make pension contributions for its forklift operators and shop employees terminated with the CBA, effective May 1, 2017. (Powell Dep. 20). Still, Sofco continued to perform the same work for which contributions had previously been made to the Fund. Specifically, Sofco continued and continues to this day to operate forklifts (now utilizing ironworkers instead of operating engineers.) (Powell 35-36). Jason Allen, an operating engineer, remains employed by Sofco performing the covered shop work as he had performed prior to the termination of the CBA. (Powell Dep. 33). While the forklift and shop work continue, contributions to the Pension Fund have ceased. (Wilson Aff. ¶¶ 5-6).

---

[3] The Deposition of Thomas Byers was taken over two days on September 26, 2018 and November 2, 2018. The cited to pages and exhibits from the Deposition of Thomas Byers are attached hereto as Exhibit C.

**III.     STANDARD OF REVIEW**

The MPPAA established the standard of review in an arbitration contesting a plan administrator's assessment of withdrawal liability. "Any determination made by a plan sponsor under sections 4201 through 4219 [of the MPPAA] and section 4225 is presumed correct unless the party contesting the determination shows by a preponderance of the evidence that the determination was unreasonable or clearly erroneous." 29 U.S.C. §1401(a)(3)(A). The statute also sets forth the standard of review if an employer contests the amount of withdrawal liability:

> (B)     In the case of the determination of a plan's unfunded vested benefits for a plan year, the determination is presumed correct unless a party contesting the determination shows by a preponderance of the evidence that--
>
> (i)     the actuarial assumptions and methods used in the determination were, in the aggregate, unreasonable (taking into account the experience of the plan and reasonable expectations), or
>
> (ii)    the plan's actuary made a significant error in applying the actuarial assumptions or methods.

29 U.S.C. §1401(a)(3)(B). An employer challenging a determination made by the plan sponsor must disprove that determination by a preponderance of the evidence. *Concrete Pipe & Prods. Of Cal., Inc. v. Constr. Laborers Pension Trust for S. Cal.*, 508 U.S. 602, 629 (1993).

"The series of presumptions prescribed by the Multiemployer Act were intended by Congress to ensure the enforceability of employer liability. In the absence of these presumptions, employers could effectively nullify their obligation by refusing to pay and forcing the plan sponsor to prove every element involved in making an actuarial determination." *Sherwin-Williams Co. v. New York State Teamster Conf. Pension & Retirement Fund*, 158 F.3d 387, 392–93 (6th Cir. 1998) (quoting H.R. Rep. No. 869, pt. I, 96th Cong., 2d Sess. 1, 86). In light of this language, "it is clear that the presumption favoring determination of the plan sponsor shifts a burden of proof or persuasion to the employer." *Cent. States, SE &SW Areas Pension Fund v. U.S. Truck Co. Holdings, Inc.*, 341 B.R.

596, 605 (E.D. Mich. 2006) (holding that the bankruptcy court erred in determining that the plan sponsor had the burden of proof to establish that the trucking industry exception to withdrawal liability applied as that burden should have been applied to the employer).  Relying upon the undisputed facts, Sofco cannot meet its burden to overturn the Fund's decision to assess withdrawal liability or the Fund's actuary's determination of the amounts of those assessments.

## IV. LAW AND ARGUMENT

Sofco submitted a Request for Review and a Supplemental Request for Review challenging three aspects of the Fund's assessments:[4]

- That the Fund improperly assessed complete withdrawal liability for the plan year ending July 31, 2017;
- That the Fund improperly assessed partial withdrawal liability for the plan years ending July 31, 2011 and July 31, 2012; and
- That the Fund improperly considered Sofco's pre-April 2004 contribution history in determining the amounts of withdrawal liability to be assessed.

### A. The Fund Properly Assessed Complete Withdrawal Liability.

Sofco's Request for Review disputed the assessment of complete withdrawal liability pursuant to the building and construction industry exception. 29 U.S.C. § 1383(b).  Sofco stated that "the Company has not continued or resumed work in the jurisdiction of the collective bargaining agreement of the type for which contributions were previously (as of April 30, 2017) required."  The undisputed evidence establishes that Sofco's statement is false and that complete withdrawal liability was properly assessed.

In the building and construction industry, a complete withdrawal occurs under the following circumstances:

---

[4] Copies of the Request for Review and the Supplemental Request for Review are attached hereto as Exhibit D.

8

    (A)    An employer ceases to have an obligation to contribute under the plan, and

    (B)    The employer--

        (i)    Continues to perform work in the jurisdiction of the collective bargaining agreement of the type for which contributions were previously required; or

        (ii)    Resumes such work within 5 years after the date on which the obligation to contribute under the plan ceases, and does not renew the obligation at the time of the resumption.

29 U.S.C. §1383(b)(2)(A)–(B).  Thus, an employer has a complete withdrawal under the statute if (a) they previously had an obligation to contribute under the plan; (b) their obligation to contribute ceased; and (c) they continue to perform any work in the jurisdiction of the collective bargaining agreement for which contributions were previously required.  All requirements for establishing complete withdrawal are undeniably met in this case.

### 1. Sofco Had an Obligation to Contribute for Forklift and Shop Work.

An "obligation to contribute" means an obligation to contribute arising under one or more collective bargaining (or related) agreements.  29 U.S.C. §1392(a).  Sofco has long been a contributing employer to the Pension Fund was most recently a party to the AGC Building Agreement.  (Powell Dep. Ex. 1; Wilson Aff. ¶ 3).  Under the terms of the CBA, Sofco was required to make contributions to the Pension Fund for all hours paid to its employees who performed any covered work.  (Powell Dep. Ex. 3, CBA ¶ 43).  Forklift operation and repair and maintenance work were covered by the CBA.  (Powell Dep. 40-42, Ex. 3, CBA ¶ 10).  Sofco acknowledged this obligation by employing operating engineers to perform forklift and shop work and by making contributions to the Fund on behalf of these employees.  (Powell Dep. 78-79, Ex. 12).

### 2. Sofco's Obligation to Contribute to the Pension Fund Ceased.

The MPPAA states that the date of complete withdrawal is the "date of the cessation of the obligation to contribute or the cessation of covered operations."  29 U.S.C. §1383(e).  Sofco terminated the CBA effective April 30, 2017.  (Powell Dep. Ex. 1; Wilson Aff. ¶ 5).  Sofco did not

9

have an obligation to make any contributions to the Pension Fund after that date. Its obligation to contribute ceased upon termination of the CBA.

### 3. Sofco Continues to Perform Covered Work in the Geographic Jurisdiction of the CBA

The CBA's geographic jurisdiction includes most of the counties in Ohio and some counties in Kentucky, including the Cincinnati and Columbus markets. (Wilson Aff. ¶ 3; Powell Dep. Ex. 3, ¶¶ 1-2). Sofco continues to operate forklifts in both the Columbus and Cincinnati markets. (Powell Dep. 12, 89, Ex. 17), some on a full-time basis. (Powell Dep. 35-36). This forklift work is, however, not being performed by operating engineers; no contributions are being made to the Fund. (Powell Dep. 36; Wilson Aff. ¶¶ 5-6).

Similarly, Jason Allen, himself an operating engineer, continues to perform the same covered maintenance and repair work for Sofco. (Powell Dep. 33). However, no contributions are being made for Allen's shop work. (Wilson Aff. ¶¶ 5-6).

That Sofco has, since the termination of the CBA, assigned forklift work to members of Ironworkers Local 172 is no defense to the assessment of withdrawal liability. The forklift work is undeniably within the jurisdiction of the Union and its CBA. The CBA itself lists forklifts; the Ironworkers CBA does not. (Powell Dep. 40-42, Exs. 3, 15). Here, there was no a jurisdictional dispute between Local 18 and the Ironworkers concerning the forklift work performed for Sofco. The Ironworkers never asserted that it was their work. (Powell Dep. 43). Sofco never initiated a jurisdictional dispute asserting that the work also belonged to the Ironworkers. (Powell Dep. 44). Notably, the Ironworkers union agreed that "***the operation of forklifts shall be the work of Operating Engineers.***" (Powell Dep. Ex. 16; Byers Dep. Ex. EE). Accordingly, Sofco is continuing to perform covered work within the jurisdiction of the Union after the termination of the CBA. The Pension Fund is being deprived of those contributions; complete withdrawal liability was properly assessed.

Having determined that an assessment of complete withdrawal liability was warranted, the Fund's actuary calculated the completed withdrawal liability in the manner prescribed by the statute and reliant upon appropriate actuarial assumptions. (Deposition of Dan Ciner 28-30) (hereinafter "Ciner Dep. ___.")[5] Complete withdrawal in the amount of $ 368,315 was properly assessed.

### B. Sofco Was Properly Assessed Partial Withdrawal Liability.

The Pension Fund also assessed partial withdrawal liability for the plan years ending July 31, 2011 ($344,627) and July 31, 2012 ($111,358), based on the decline in contributions from Sofco over a three-year testing period. (Wilson Aff. ¶ Ex. 3; Ciner Dep. Ex. 11). Sofco's contribution history is established. (Wilson Aff. ¶¶ 7-9, Exs. 2 and 3). Sofco's own Request for Review acknowledges the significant drop in contributions relative to the maximum average contribution base units.

- Partial withdrawal liability for the Plan year ending July 31, 2011 in the amount of $344,627, based on finding that the ratio of hours to maximum average contribution base units ("CBUs") during a 3 year testing cycle were as follows:

  * 2011 - 9%
  * 2010 – 4%
  * 2009 – 13%

- Partial withdrawal liability for the Plan year ending July 31, 2012 in the amount of $111,358, based on finding that the ratio of hours to maximum average CBUs during a 3 year testing cycle were as follows:

  * 2012 – 18%
  * 2011 – 9 %
  * 1020 – 4%

*See* Sofco's Request for Review, dated November 10, 2017. There is no dispute as to the degree to which Sofco's contributions to the Fund declined. The only question is whether the decline in contributions was significant enough to trigger a partial withdrawal. It was.

In most cases partial withdrawal liability is imposed when "there is a 70-percent contribution decline." 29 U.S.C. § 1385(a)(1). This 70% decline is measured using a three (3)-year testing

---

[5] The assessments were prepared by the Fund's actuary based upon reasonable actuarial assumptions and methods. Cited pages and exhibits from the deposition of Dan Ciner are attached hereto as Exhibit E.

11

period. 29 U.S.C. § 1385(b)(1)(A). However, as is the case with complete withdrawal liability, a special rule is applicable in this case, which arises in the construction industry.

As an employer in the building and construction industry, the 70% decline rule does not apply to Sofco. Sofco "is liable for partial withdrawal only if [its] obligation to contribute under the plan is continued for ***no more than an insubstantial portion*** of its work in the craft and area jurisdiction of the collective bargaining agreement of the type for which contributions are required." 29 U.S.C. § 1388(d)(1). Here, as noted above, Sofco's contributions declined well beyond the 70% threshold. Its contributions continued for only an insubstantial portion of its prior work in the CBA's jurisdiction. Accordingly, partial withdrawal liability was properly assessed.

Sofco argues in its Request for Review that while the term "insubstantial portion" has not been defined by the statute, the Pension Benefit Guaranty Corporation (the "PBGC"), or in case law, the Pension Fund should interpret it to mean that only a decline greater than 98% (or continued contributions at only 2% of the maximum average contribution) should trigger partial withdrawal for an employer in the building and construction industry. (Request for Review, November 10, 2017, p. 5). Sofco's argument should be rejected for several reasons.

Efforts to define partial withdrawal in the building and construction industry according to a defined percentage have been repeatedly rebuffed. The legislative history reveals an effort by construction industry employers to convince Congress to define "insubstantial portion" to mean no more than "five percent of the work volume of the unionized employer." (MPPAA Committee Notes, Feb. 19, 1980 p. 131).[6] Congress declined to adopt this suggestion. Accordingly, Sofco's suggestion that Congress had intended for "insubstantial portion" to be defined as "2% or less" is not supportable. Any reasonable definition must allow for partial withdrawal when contributions continue at a level less than 30% (the 29 U.S.C. § 1385(a)(1) standard) but greater than 5% (the

---

[6] The Committee's notes are attached hereto as Exhibit F.

proposed definition rejected by Congress). Sofco's contribution history falls within this range.

Adopting Sofco's standard would allow for partial withdrawal liability in the building and construction industry in the case of a 98% or 99 % decline in contributions. Sofco's proposed definition is so narrow that it effectively eliminates partial withdrawal in the construction industry.[7] Had Congress intended to eliminate partial withdrawal as a concept for the construction industry, it could have done so (*see*, *e.g.,* 29 U.S.C. § 1399(d)(2)). The Arbitrator should not eliminate the possibility of partial withdrawal in the construction industry by adopting a narrow definition of "insubstantial portion." Such a positon would define partial withdrawal out of existence, when Congress plainly intended for it to exist.

Finally, the lack of a clear percentage to define "insubstantial portion" was not an oversight. The PBGC has specifically declined to provide a more specific definition:

> PBGC offers no opinion as to whether any given percentage of work constitutes an "insubstantial portion." Many provisions of ERISA contain specific numerical thresholds and tests governing withdrawal liability determinations. *See, e.g.*, ERISA § 4209(a), 29 U.S.C. § 1389(a) (allowing in certain multiemployer plans a reduction of unfunded vested benefits allocable to a particular employer by the lesser of 3/4 of 1-percent of the unfunded vested obligations or $ 50,000); ERISA § 4208(a)(1), 29 U.S.C. § 1308(a)(1) (reducing partial withdrawal liability for an employer who has been obligated to contribute at least 90-percent of the total contribution base units for the high base year for two consecutive plan years following partial withdrawal); ERISA § 4208(b), 29 U.S.C. § 1308(b) (reducing partial withdrawal liability for an employer who has been obligated for two consecutive plan years following partial withdrawal to contribute at least 30-percent of the total contribution base units for the high base year, where the total obligations to contribute for those two plan years are at least 90-percent of the contribution base units for the high base year). Congress did not specify a comparable numerical test in section 4208(d)(1). **Accordingly, such fact-specific determinations are the responsibility of the plan sponsor**. ERISA § 4202, 29 U.S.C. § 1382. Any dispute between the plan sponsor and the employer over the validity of that determination are to be resolved first through arbitration and then by district court review. ERISA § 4221, 29 U.S.C. § 1401.

---

[7] Given that Sofco's contributions declined by 96% in some years, Sofco was forced to argue for the adoption of this unrealistically narrow definition of "insubstantial portion."

*See* PBGC Opinion Letter 95-2 (emphasis added).[8] Congress or the Corporation could have provided further guidance, but chose not to. Accordingly, what constitutes an insubstantial portion is left to the determination of the Fund.

The Pension Fund's determination is "presumed correct," and Sofco bears the burden to prove the Fund's determination to have been "unreasonable or clearly erroneous." 29 U.S.C. § 1401(a)(3). Here, given the decline in contributions, the discretion left to the Fund to make such determinations, and the presumptions in favor the assessment and payment of withdrawal liability, Sofco cannot meet its burden to overturn the Fund's assessments.

In each of the three-year measurement periods relevant to the 2011 and 2012 assessments of partial withdrawal liability, the measured decline in contributions far exceed the normal 70% threshold. The declines measured in the range of 82%-96%. For the 2011 assessment, the average decline in contribution was 91.4%; for the 2012 assessment it was 89.7%. The parties agree that the decline in contributions must be greater than 70%. Given the legislative history (Exhibit F), it is also apparent that a decline of more than 95% is not required.

Sofco's contributions declined because it employed a limited number of operating engineers relative to its past participation. From 2011 through the termination of the CBA in 2017, Sofco utilized operating engineers for one maintenance position and for a limited number of forklift operators. Sofco's President, Dan Powell, admitted in deposition that this remaining participation ***did not represent a "substantial" portion*** of Sofco's business. (Powell Dep. 77). In spite of this admission, Sofco still seeks to avoid the partial withdrawal liability assessments.

Sofco's decline in contributions falls closer to 95% than to 70%. Sofco can point to no fact or legal authority to meet its burden to demonstrate that the Pension Fund's partial withdrawal assessments were unreasonable or clearly erroneous. Given the facts and the legal presumptions

---

[8] PBGC Opinion Letter 95-2 is attached hereto as Exhibit G.

favoring the Fund, Sofco cannot meets its burden. The assessments of $344,627 and $111,358 must be upheld.

### C. SOFCO CANNOT IGNORE ITS PRE-2004 CONTRIBUTION HISTORY.

Sofco Erectors, Inc. has been a contributing employer to the Pension Fund for decades. The Fund maintains signature pages of CBAs executed by Sofco dating back to the 1980s. (Wilson Aff. ¶ 2, Ex. 1.) When a new employer signs with the Union, the Fund assigns that employer a unique contractor identification number. That number is listed on the contribution form submitted each month to the Fund. (Wilson Aff. ¶ 11.) Sofco Erectors was assigned a contractor number of 6794-5. It contributed to the Fund under that name and contractor number without interruption from before to 2004 until the April 2017 termination of the CBA. (Wilson Aff. ¶ 12, 15, Ex. 4). The Fund's actuary, Dan Ciner of Segal, calculated the assessments based upon Sofco's contribution history. (Wilson Aff. ¶ 7, Ex. 2).

In its Supplemental Request for Review, Sofco alleged:

> The Company began operations on April 1, 2004, when it purchased the assets of its predecessor. Affidavit of John Hesford, attached as Exhibit 1 to Company's Request for Review dated November 10, 2017. This was an arms-length transaction. Neither of the Company's owners, John Hesford and Dan Powell, had any ownership in the predecessor Company or familial relationship with its owners. The previous owner of these assets was Southern Ohio Fabricators, Inc.; a list of its owners at time of purchase is attached as Exhibit 1.
>
> Southern Ohio Fabricators, Inc. and its owners ceased operations entirely, and therefore had no withdrawal liability. 29 U.S.C. § 1383(b)(1). Accordingly, the Company began operations on April 1, 2004 with a clean slate as to the Fund.

(Supplemental Request for Review, November 29, 2017, p. 1). Contrary to the above-statements, Southern Ohio Fabricators, Inc. has never been a contributing employer to the Fund, and the Fund has no record of any collective bargaining agreement in effect between the Union and Southern Ohio Fabricators, Inc. (Wilson Aff. ¶¶ 13-14). Accordingly, given Sofco's uninterrupted contribution history, the Fund found the Supplemental Request to be unpersuasive.

Following discovery, it is now evident that Sofco's description of itself as a "new" business

started in April 2004 arising out of an "arms-length transaction" was not only a disingenuous attempt to reduce its responsibility for withdrawal liability, but one unmoored to the facts and unsupported by documentation.

Sofco was run by the same three people before and after April 1, 2004: James Ludwig, Dan Powell and John Hesford.  Powell and Hesford continue to manage Sofco today as co-Presidents.  (Powell Dep. 11-12).  James Ludwig was the President of Sofco before April 1, 2004 and he remained the President of Sofco after April 1, 2004, until his retirement several years later  (Powell Dep. 11, 46-47).  Ludwig was identified by Sofco as one of its owners before and after April 1, 2004 (Supplemental Request for Review, Ex 1).  Further, Dan Powell managed the Central Ohio market for Sofco before and after April 1, 2004.  John Hesford managed the Cincinnati market for the Company before and after April 1, 2004.  Indeed, Powell testified that he has managed the Central Ohio market for Sofco since the 1990s and still does so today.  (Powell Dep. 12).

Sofco did not sign a new CBA with the Union effective April 1, 2004. (Wilson Aff. ¶ 14).  It continued its relationship with the Union under the same contract, same name, and same contractor number as before.  (Wilson Aff. ¶ 12).  Sofco made contributions on behalf of many of the same employees both before and after April 1, 2004.  (Wilson Aff. ¶ 15).  Sofco provided no notice to the Fund or to the Union of any change in ownership or status.  (Powell Dep. 97; Wilson Aff. ¶ 14).

Far from an "arms-length transaction," the alleged 2004 transaction was merely an acquisition of ownership by two long-time insiders (Powell and Hesford) – joining President James Ludwig as owners in addition to their officer positons.  Notably, Sofco refused in discovery to identify the consideration – if any – paid by Hesford and Powell to attain their ownership interests in Sofco in April 2004, contending the amount of consideration paid to be irrelevant.  A legitimate arm's length transaction would be supported by adequate market-rate consideration.  Sofco, having failed to produce this information or much else in the way of documentary evidence to support its Supplemental Request for Review, cannot meet its burden of proof.

16

The Fund appropriately utilized Sofco's contribution history in calculating the withdrawal liability amounts. Sofco failed to meets its burden to demonstrate that the Fund's determinations were unreasonable or clearly erroneous.[9]

## V. CONCLUSION

Sofco has wholly failed to meets its burden to set aside the Pension Fund's assessments of withdrawal liability. Sofco had an obligation to make contributions to the Funds for covered work, including forklift and shop work, hired Local 18 members to perform such work and made contributions to the Fund on their behalf, and continues to perform the same type of work within Local 18's jurisdiction after terminating the CBA. In doing so, Sofco has reduced the contribution base of the Pension Fund. The same work is now being performed, but no contributions are being made. This is precisely the scenario for which withdrawal liability was designed.

Sofco's challenge to the partial withdrawal liability assessments is equally lacking in merit. Sofco dramatically decreased its participation in the Fund, continuing to contribute for only the above-referenced forklift and shop work. Sofco admits that the forklift and shop work was not a substantial part of its business. As such the Fund reasonably determined that the decline in contributions was significant enough to trigger partial withdrawals in 2011 and 2012. Sofco cannot meet its burden to have these assessments set aside. Sofco must pay each of the three assessments in full for a total of $824,300.

---

[9] Sofco attempted to offer sworn testimony in the form of affidavits. These affidavits were admitted by Mr. Powell to be inaccurate and incomplete. (Powell Dep. 74-76). Additionally, Sofco provided evidence that contradicted its own Request for Review and Answers to Interrogatories that were also inaccurate. (Powell Dep. 94-96).

Respectfully submitted,

*/s/Daniel J. Clark*
Daniel J. Clark (0075125)
Allen S. Kinzer (0040237)
Vorys, Sater, Seymour and Pease LLP
52 East Gay Street, P.O. Box 1008
Columbus, OH 43216-1008
Direct Phone: (614) 464-6436
Direct Fax: (614) 719-4650
Email: djclark@vorys.com
askinzer@vorys.com

**CERTIFICATE OF SERVICE**

The undersigned does hereby certify that a true and accurate copy of the foregoing, *Motion for Summary Judgment of the Ohio Operating Engineers Pension Fund*, was submitted to the AAA at JaniceHoldinski@adr.org to the Arbitrator John E. Sands, and served on this 22nd day of February 2019, upon the following:

*By e-mail:*

Gary L. Greenberg
Mark Gerano
Jackson Lewis P.C.
PNC Center, 26th Floor
201 E. Fifth St.
Cincinnati, OH 45202
Gary.Greenberg@Jacksonlewis.com

*Attorneys for Sofco Erectors, Inc.*

*s/Daniel J. Clark*
Daniel J. Clark