AMERICAN ARBITRATION ASSOCIATION

| | | |
|---|---|---|
| SOFCO ERECTORS, INC. | : | Case No:  01-18-0001-3790 |
| | : | JS Case No: 4510 |
| "Employer" | : | |
| | : | |
| And | : | |
| | : | **EMPLOYER SOFCO ERECTORS INC.'S** |
| | : | **RESPONSE TO OHIO OPERATING** |
| OHIO OPERATING ENGINEERS | : | **ENGINEERS' PENSION FUND'S** |
| PENSION FUND | : | **MOTION FOR SUMMARY JUDGMENT** |
| | : | |
| "Fund" | : | |
| | : | |
| | : | |

**TABLE OF CONTENTS**

I.   INTRODUCTION ........................................................................................................ 1

II.  FACTS ...................................................................................................................... 2

    A.   The Undisputed Facts. ............................................................................. 2

    B.   Sofco Raised the Segal Blend Issue in its Supplemental Request for Review by Reserving the Right to Raise Issues Relating to Requested Information the Fund Failed to Produce Until Discovery........................................................................ 2

III. LEGAL ARGUMENT................................................................................................ 3

    A.   The Fund's Complete Withdrawal Liability Assessment is Clearly Erroneous Because Contributions Were Not Required for Forklift Work Sofco Assigned to Ironworkers or Shop Work. ................................................................................... 3

        1.  Contributions to the Fund were never required for the work Sofco performed after it terminated the Local 18 CBA............................................................... 3

        2.  Local 18 waived any claim it had to the forklift and shop work. ..................... 5

        3.  The International Union of Operating Engineers' fifty year old, non-binding, inadmissible "Jurisdictional Agreement" with the International Iron Workers Union does not mean forklift work belonged exclusively to Local 18............. 7

    B.   The Fund's Partial Withdrawal Liability Assessment is Clearly Erroneous. ......... 8

i

1.  The Fund incorrectly calculated the amount of decline in contributions based on an average over three years rather than determining whether the contributions were insubstantial for each of the three years............................. 8

2.  "Insubstantial portion" must mean something much more than a 70% decline, and Sofco's contributions were more than insubstantial. ................................ 10

C.  Sofco, As an Asset Purchaser, Is Not Liable for its Predecessor's Contribution History.................................................................................................................... 12

IV. CONCLUSION...................................................................................................................... 14

## I.   INTRODUCTION

The Fund's Motion for Summary Judgment must be denied and Sofco's Motion for Summary Judgment must be granted because the Fund's withdrawal liability assessments are clearly erroneous.  The Fund's withdrawal liability assessments are nothing more than a disguised jurisdictional dispute the Fund is using to punish Sofco for cancelling its collective bargaining agreement with Local 18 and continuing to lawfully assign forklift work to Ironworkers and shop work to non-Local 18 members.  The assessments should be set aside.

The Fund's complete withdrawal liability assessment is erroneous because after Sofco terminated the Local 18 CBA, it never performed work for which contributions to the Fund were previously required.  The Fund's partial withdrawal liability assessment is also clearly erroneous because the Fund applied the wrong statutory formula in assessing Sofco for a partial withdrawal, and Sofco's contributions during the years in question were more than insubstantial.

The Fund also unlawfully considered Sofco's predecessor's contribution history.  Sofco and its predecessor were wholly different legal entities, and therefore Sofco did not inherit its predecessor's contribution history.  Further, the Fund used an interest rate different than the one it used to determine funding in order to calculate withdrawal liability.

The withdrawal liability assessments should be set aside, and the Fund's Motion for Summary Judgment must be denied.

## II.   FACTS

### A.  The Undisputed Facts.

For the purposes of efficiency, Sofco will not restate the undisputed facts, which were set forth in its Memorandum in Support of its Motion for Summary Judgment.  To the extent the Fund alleges certain facts not included in Sofco's Memorandum, most are immaterial.

### B.  Sofco Raised the Segal Blend Issue in its Supplemental Request for Review by Reserving the Right to Raise Issues Relating to Requested Information the Fund Failed to Produce Until Discovery.

The Fund incorrectly alleged that Sofco only raised three issues in its Request for Review.  (Fund's Motion for Summary Judgment, p. 8.)  Sofco's Request for Review was not limited to the three issues, it included a fourth.  In Sofco's Motion for Summary Judgment, Sofco argues that the Fund incorrectly used the Segal Blend interest rate in calculating Sofco's alleged withdrawal liability assessment rather than the higher interest rate it used to determine funding levels.  (Sofco's Motion for Summary Judgment, pp. 20-23.)  Sofco timely raised this issue in its Supplemental Request for Review dated November 29, 2017.  (*See* Supplemental Request for Review, Section II.)

The Supplemental Request for Review stated:  "On November 15, 2017, counsel for the Company e-mailed the following requests for information to counsel for the Fund . . . [including] withdrawal liability reports for 7/31/2008, 7/31/2009, and 7/31/2016, as referred to in the Exhibits E, K, and U attached to the Segal Consulting letter dated 8/29/2017 . . . None of the requested information has been provided.  Accordingly, the Company reserves the right to raise issues related to the requested information in arbitration."   (*Id.*)

The Segal Consulting letter that was attached to the Fund's assessments did not include any explanation of how the Fund's unfunded vested liability was calculated, and there was no

reference to the Segal Blend.  (*See* Withdrawal Liability Assessment.)  The information was in the "withdrawal liability reports" that were referenced, but not included with the Segal report provided with the assessments.  When Sofco finally received, during discovery, the documents it had requested during the review period, it then learned for the first time that the Fund had used the Segal Blend.  The Fund now wishes to deny Sofco a fair hearing on the Segal Blend issue based on the Fund's wrongful withholding of relevant information during the review period.  The Fund's attempt to benefit from its own wrongdoing must be rejected.

Moreover, the Fund has been on notice of Sofco's intent to argue the funding-rate issue since September 7, 2018 when Sofco provided a report to the Fund from its actuarial expert that calculated the assessment using the funding interest rate instead of the Segal Blend.  Sofco never waived the issue, and the Fund is not prejudiced by Sofco raising it.

### III.  LEGAL ARGUMENT

#### A.  **The Fund's Complete Withdrawal Liability Assessment is Clearly Erroneous Because Contributions Were Not Required for Forklift Work Sofco Assigned to Ironworkers or Shop Work.**

##### 1. **Contributions to the Fund were never required for the work Sofco performed after it terminated the Local 18 CBA.**

The Fund's Motion for Summary Judgment overlooks a key issue:  contributions were only required for work within Local 18's jurisdiction that Sofco assigned exclusively to Local 18 members, not work Sofco lawfully assigned to others.  Because Sofco has only continued its practice of lawfully assigning forklift work to Ironworkers and its shop work to individuals who were non-Local 18 members, Sofco has not continued performing any work in Local 18's jurisdiction *of the type for which contributions were required.  See Stevens Eng'rs & Constructors, Inc. v. Iron Workers Local 17 Pension Fund*, 2016 U.S. Dist. LEXIS 114028, *55

3

(N.D. Ohio 2016)("since the work at issue was assigned to [the competing union] it is not work for which contributions **had ever been required to the Fund**. It follows that the Fund may not assess withdrawal liability based upon work which is not within its jurisdiction and for which contribution to the Fund had never been required.")(emphasis added).

Forklift operation, without question, is work within the Ironworkers' jurisdiction. (*See* Sofco's Motion for Summary Judgment, Section II(B)(2).) The Fund takes issue with the fact that "forklift" is not explicitly listed in the Ironworkers Local 172 CBA. (Fund Motion, p. 10.) But, forklift work is covered under that CBA. Dan Powell testified that numerous parts of the CBA included forklift work. (Powell Dep. 83-85[1].) And there is no evidence to the contrary. Moreover, all of the other Ironworkers' CBAs at issue here explicitly list forklift work as Ironworkers' work. (*See* Sofco's Motion for Summary Judgment, Section II(B)(2).) As a result, Sofco was well within its rights to assign forklift work to the Ironworkers; it did not belong exclusively to Local 18.

At most, the forklift work is within the *overlapping* jurisdiction of the Ironworkers and Local 18. Since the forklift work was within the overlapping jurisdiction of the two unions, and because no jurisdictional determination was ever made, Sofco was within its rights to assign the forklift work to whichever union it wanted. *Stevens Eng'rs & Constructors, Inc. v. Iron Workers Local 17 Pension Fund*, 2016 U.S. Dist. LEXIS 114028, *55 (N.D. Ohio 2016). Because contributions to the Fund were never required for forklift work Sofco has not continued performing work for which contributions were required.

---

[1] Sofco filed the record and referenced exhibits and authorities with its Motion for Summary Judgment. All references to documents refer to those attached to Sofco's Motion for Summary Judgment unless otherwise specified.

4

Likewise, contributions were never required for shop work.  Sofco employed several individuals to perform its shop work including non-Local 18 members.  (Hesford Aff. ¶ 14.) Since Sofco's inception in 2004, more than 75% of the hours of shop work that have been performed have been performed by individuals other than Local 18 members.  (Hesford March 1, 2019 Aff. ¶ 3, attached as Exhibit 1.)  Sofco never sought out Local 18 members to perform shop work because the work was within Local 18's jurisdiction or because it wanted a Local 18 member to perform the work, rather Sofco identified individuals that were good workers and employed them to do the work, regardless of which union card (if any) they carried.  (Hesford Aff. ¶ 4, attached as Exhibit 1.)  Stated differently, Sofco did not employ certain shop workers *because* they were members of any specific union.  Some of the individuals Sofco employed to perform shop work happened to be Local 18 members; others were not.  (Hesford Aff. ¶ 14.) Now, Sofco assigns none of the shop work to Local 18 members, and because Sofco was never "required" to contribute to the Fund for shop work in the first place, it is not performing work within Local 18's jurisdiction for which contributions were previously required.

Because Sofco is not performing work in Local 18's jurisdiction for which contributions were previously required, the complete withdrawal assessment is clearly erroneous.

### 2. Local 18 waived any claim it had to the forklift and shop work.

If Local 18 had a claim to <u>all</u> of the forklift work, even the forklift work Sofco assigned to Ironworkers, it waived any such claim when it failed to pursue a final and binding determination that the work belonged to it.  Where two unions both claim certain work and a union fails to submit its jurisdictional challenge to secure a determination as to which union the work belongs to, the union abandons its claim to the work.  *See Stevens Eng'rs & Constructors, Inc. v. Local 17 Iron Workers Pension Fund*, Opinion and Order p. 25 (Sands, J. 2015).

5

Here, it is undisputed that Local 18 never challenged Sofco's assignment of shop work to non-Local 18 members. (Byers Dep. 80.) Thus, any claim Local 18 had to the shop work was waived. Likewise, Local 18 failed to seek a final determination as to whether forklift work belonged exclusively to Local 18 and not the Ironworkers. (Byers Dep. 95.) Indeed, although Ironworkers performed thousands of hours of forklift work over a thirteen-year period, Local 18 filed grievances on only a few occasions. (Byers Dep. Exs. Q, R, S, T, U, V.) These grievances were not "resolved in favor of Local 18," Sofco just agreed to hire Local 18 members for small amounts of work in order to keep the peace. (Exs. Q, R, S, T.) Ultimately, though, Sofco maintained its position that forklift work belonged to the Ironworkers in early 2017 on the Hetzel Street Job, and Local 18 never pressed the issue further.[2] (Hesford Aff. ¶ 15.) Because it failed to pursue the issue further, under *Stevens*, the Fund cannot now claim that the terminated CBA required contributions for this work. *See also Trs. of the B.A.C. Local 32 Ins. Fund v. Ohio Ceiling & Partition Co.*, 48 Fed. Appx. 188, 198 (6th Cir. 2002)("Looking at the basis for the protections afforded to ERISA plans under § 515, nothing suggests that it was intended to afford ERISA fiduciaries a weapon against employers in undeclared jurisdictional disputes with competing unions."). Moreover, it was Local 18's responsibility, not Sofco's (as the Fund incorrectly contends), to initiate a jurisdictional dispute if it thought all of the forklift work belonged to it. *See Trs. of the B.A.C. Local 32 Ins. Fund v. Ohio Ceiling & Partition Co.*, 48 Fed. Appx. 188, 198 (6th Cir. 2002)(where a union fails to seek a jurisdictional determination that union's benefit funds cannot claim contributions for the work). Local 18 waived any claim

---

[2] One grievance was resolved after the date the Hetzel Street grievance was filed (Byers Dep. Ex. S, however Sofco never resolved the Hetzel Street grievance and instead maintained its position that assigning all forklift work to Ironworkers was proper.

it had to any of the disputed work when it did not seek out a final determination that the work belonged to it.

> ### 3. The International Union of Operating Engineers' fifty year old, non-binding, inadmissible "Jurisdictional Agreement" with the International Iron Workers Union does not mean forklift work belonged exclusively to Local 18.

The Fund argues—contrary to the rules of evidence, the undisputed facts, and the law— that the forklift work belongs to Local 18 because "the Ironworkers union agreed that 'the operation of forklifts shall be the work of Operating Engineers.'" (Fund's Motion for Summary Judgment, p. 10.) First, the document—a 1970 "Jurisdictional Agreement" between the Ironworkers' International Union and the Operating Engineers International Union—is unauthenticated and cannot be considered as evidence. Local 18's president found it in a desk drawer and has no idea where it came from, and he testified that he "couldn't tell [] one way or another if that's a true and accurate copy of it." (Byers Dep. 140.) Second, neither Local 18 nor any of the Ironworkers locals at issue here were parties to the agreement. (Byers Dep. Vol II, Ex. EE.) Local 18 (the non-party) and its international (the party) are wholly separate. Local 18's President does not even report any of his actions to the International. (Byers Dep. Vol, II 135.) Also, the Ironworkers locals at issue here obviously did not agree that forklift work belonged to Local 18; two of the three explicitly included it in their collective bargaining agreements that cover the same geographic area as Local 18's CBA, and the third did so implicitly. Third, the purported agreement contains a dispute resolution procedure, and there is no evidence Local 18 ever followed it. It states "[i]f a jurisdictional dispute cannot be settled locally, or a question of interpretation arises as to the meaning or intent of this agreement, it shall be referred immediately to the respective General Presidents or their designees for an answer." (*Id.*) Here, Local 18 never raised the issue in accordance with the agreement. Lastly, the

7

agreement is not legally enforceable because Sofco and Local 18 never agreed to it. *See*

*International Union of Operating Engineers, Local No. 139 and McWad, Inc., et al.*, 262

N.L.R.B. 1300 (1982)(interunion agreement between Operating Engineers and Laborers over

forklift work not enforceable because the employer did not consent to the agreement and the

Laborers continued claiming the work despite the agreement to the contrary). The Arbitrator

should not consider the purported jurisdictional agreement.

### B. The Fund's Partial Withdrawal Liability Assessment is Clearly Erroneous.

#### 1. The Fund incorrectly calculated the amount of decline in contributions based on an average over three years rather than determining whether the contributions were insubstantial for each of the three years.

The Fund's assessment of partial withdrawal liability is erroneous because during the

years in question, Sofco's work continued for more than an insubstantial portion. Under 28

U.S.C. § 1388(d)(1), a construction industry employer is only liable for partial withdrawal "if the

employer's obligation to contribute under the plan is continued for no more than an *insubstantial*

*portion* of its work in the craft and area jurisdiction of the collective bargaining agreement of the

type for which contributions are required."

The Fund incorrectly calculated the underlying rate it used to determine whether Sofco's

contributions continued for more than an insubstantial amount. In determining whether partial

withdrawal occurred, the Fund evaluates whether the "decline" occurred during three *consecutive*

years during the five year lookback period. (*See* Segal Calculations with Fund's Withdrawal

Liability Assessment, p. 2.) Stated differently, the contributions must be "insubstantial" for each

of three years in a row. Sofco's highest contribution rates during each of the three year testing

8

periods were 13%, 18%, and 28%, far more than any reasonable definition of "insubstantial."[3]

Although its actuary used the three-year testing periods in calculating partial withdrawal liability, the Fund now argues that rather than evaluating whether contributions were insubstantial for each of three years in a row, it is appropriate to instead average the contributions over a three-year period and then decide if the average contribution level is insubstantial. (Fund's Motion for Summary Judgment, p. 14.) The Fund's methodology is wrong. First, no authority suggests that the contributions during the three-year testing period should be averaged to determine whether partial withdrawal occurred. Second, if the Fund's methodology—averaging the contribution decline rather than evaluating whether contributions were insubstantial each of three years in a row—was used, non-construction industry employers (to whom the 70% decline rule applies) would be subjected to an easier standard for avoiding withdrawal liability than construction industry employers (to whom the "insubstantial" rule applies). For example, if a non-construction industry employer's contributions continue for 31%, 3%, and 3% over the three-year testing period, that employer would have no partial withdrawal liability because in one of the years its contributions exceeded the 30% threshold. However, if a construction industry employer like Sofco had contributions of 31%, 3%, and 3%, and the Fund applied its averaging method, then the construction industry employer's contributions would be considered 12.3% on average, which the Fund would apparently (according to its counsel) find to be insubstantial. The statute uses the term "insubstantial" for

---

[3] Sofco's contributions during the Fund's first three-year testing period (as of July 31, 2011) were: 13% (2009); 4% (2010); 9% (2011). (Segal August 19, 2017 Calculation, Ex. A (the exhibits referred to herein are the exhibits attached to the Segal Calculation document).) During the second testing period (as of July 2012) the contributions were: 4% (2010); 9% (2011); and 18% (2012). (Segal August 19, 2017 Calculation, Ex. F.) And during the last of the testing periods (as of July 31, 2013), the contributions were 9% (2011); 18% (2012); and 28% (2013).

construction industry employers because Congress clearly intended to require a higher decline in contribution rates to trigger partial withdrawal liability for construction industry employers. The Fund's methodology defies this purpose and is therefore incorrect.

### 2. "Insubstantial portion" must mean something much more than a 70% decline, and Sofco's contributions were more than insubstantial.

Although the statute and PBGC have not defined "insubstantial portion," the term must mean a decline in contributions substantially greater than the "70% decline" formula set forth in the provision applicable outside the construction industry. *See* 29 U.S.C. § 1385(a)(1). Indeed, Sofco and the Fund agree that insubstantial means something more than a 70% decline. (Fund's Motion for Summary Judgment, p. 14.) What the parties do not agree upon is how much more the decline must be. The Fund cites a legislative history document from 1979 in which a proposal to define "insubstantial" as 5% was made and never adopted by a majority of Congress. (Fund's Motion for Summary Judgment, Exhibit F.) The Fund contends that because a majority of Congress never adopted the proposal to define "insubstantial" as 5% that insubstantial must mean something more than 5%. (*Id.*) However, nothing in the document suggests why the 5% proposal was not adopted by a majority of Congress. Indeed, it is just as likely that Congress thought insubstantial meant something lower than 5% and chose not to adopt the percentage for that reason. The better use of the legislative history is as a guide to the thinking of the drafter. *See Barbizon Corporation v. Ilgwu National Retirement Fund C*, 842 F.2d 627, 631 (2d Cir. 1988)(proposed definition of "facility" for withdrawal liability purposes is a guide to the drafter's intent, even though ultimately not incorporated). This suggests that "insubstantial" should be defined as around 5% or less in each of the three years.[4]

---

[4] *See also* IRS Publication 1771 (defining insubstantial as 2%).

10

The Fund also argues that a PBGC Opinion Letter gives the Fund unfettered discretion to define "insubstantial." (Fund's Motion for Summary Judgment Ex. G.) However, the PBGC letter offers no guidance as to what "insubstantial" means—the letter actually states "PBGC offers no opinion as to whether any given percentage of work constitutes an "insubstantial portion."' (*Id*.)(emphasis added)

The Fund has never defined the standard for determining what amount constitutes an insubstantial portion—it just believes Sofco's contributions during the years in question are insubstantial because it says so. (*Id.*) The Fund offers no rationale whatsoever for this position, and it does not identify what threshold it used. The Fund's lack of any reasonable definition for insubstantial is not surprising, though, because the Fund admits that it has no document containing a definition of "partial withdrawal," it has never assessed partial withdrawal against any other employer, and it has never audited any other employer to determine whether any other employer could have partial withdrawal liability. (Fund 30(b)(6) Dep. 24-25.) These facts further underscore that the Fund's action here is nothing more than a means to retaliate against an employer for cancelling an agreement and lawfully giving work to another union.

The Fund simply lacks the unfettered discretion to arbitrarily decide what is insubstantial and what is not. Although the Fund may have some discretion to make *factual* determinations, determining the meaning of "insubstantial" under the statute is a legal determination and must be based upon something other than the Fund's sole judgment. *See Concrete Pipe & Prods. v. Constr. Laborers Pension Trust*, 508 U.S. 602, 626 (1993). Indeed, if the statute permitted the Fund to define the term "insubstantial" in whatever manner it wished and then have a presumption of correctness as to its determination, the statute would be unconstitutional. *Id.*

Insubstantial means something; the term should not be interpreted in a manner that keeps

11

construction industry employers in the dark about whether they may have partial withdrawal liability. The legislative history the Fund cites identifies this very point. (Fund Motion for Summary Judgment Ex. F)("Construction industry employers should not be asked to guess at when their partial withdrawal liability may attach, if at all.") Congress never intended for the Fund to have unfettered discretion in this area. Based on any plausible definition of insubstantial, Sofco's contributions continued for more than an insubstantial amount during the years in question, and therefore the partial withdrawal liability assessment was erroneous.

## C. Sofco, As an Asset Purchaser, Is Not Liable for its Predecessor's Contribution History.

When the Fund calculated Sofco's alleged withdrawal liability, its calculations took into account both Sofco's contribution history and Sofco's predecessor's contribution history prior to 2004. (Ciner Dep. 37-39.) The fact that the Fund used Sofco's predecessor's contribution history to calculate the assessment meant that the assessed amount was much higher than it would have been if the Fund had only considered Sofco's contribution history. (*Id.* at 38.)

The Fund argues that Sofco and its predecessor are the same entity because the same personnel worked at both companies and because Sofco did not obtain a new contractor identification number with Local 18. (Fund's Motion for Summary Judgment, pp. 15-16.) All of the facts the Fund alleges to support its contention that the two companies are the same have no bearing on the *legal* relationship between the two entities, which is the critical issue in determining whether one company can be responsible for its predecessor's contribution history.

As for the *legal* distinctions between the two companies, Hesford, Powell, Schmitt, and Ludwig formed a completely different legal entity. (Hesford Aff. ¶ 2-5.) They purchased the assets of the predecessor company (including its name), because they wished to perform the

12

same business as the old company and rely upon its industry reputation to continue obtaining work. (Id.) The Asset Purchase Agreement did not include an assumption of Old Sofco's obligations to the Fund, or its contribution history.[5] (Hesford Aff. ¶ 3, Ex. A to the Affidavit.) No bond was posted, and Old Sofco did not agree to secondary liability to the Fund. (Hesford Aff. ¶ 3.) Sofco's owners did nothing different than what many asset purchasers do: purchase the assets of a company and operate the company under the same name and in the same industry, just with different ownership. If the Fund is correct that an asset purchaser inherits its predecessor's contribution history under these facts, any asset purchaser that wanted to buy assets and continue in a similar business would be stuck with its predecessor's contribution history. Such a result would defeat the purpose of an asset purchase and is contrary to the law. *See CenTra, Inc. v. Cent. States*, 578 F.3d 592, 601-02 (7th Cir. 2009); *Richland Industries, Ltd. v. Robbins*, 617 F.Supp. 639, 644 (N.D. Ill. 1985)("Section 1384 (in tandem with Section 1383(a)) establishes that an arms' length sale of assets normally occasions a complete withdrawal from the plan by the seller. That subjects the seller to full withdrawal liability. And the purchaser undertakes no liability at all for the seller's contribution history, unless the purchaser posts a special bond and the seller agrees contractually to assume secondary liability

---

[5] The Fund complains that Sofco "refused in discovery to identify the consideration" the new owners paid for Old Sofco's assets. (Fund's Motion for Summary Judgment, p. 16.) First, the Fund's assertion is incorrect. Sofco redacted the purchase price from the Asset Purchase Agreement during discovery because it did not want the Local 18 or the Fund to have access to its confidential and proprietary business information. Indeed, the terms of the Asset Purchase Agreement, even absent the price, demonstrate this was a legitimate arm's-length transaction. When the Fund complained that Sofco produced only a redacted version, Sofco's counsel asked the Fund to state why it needed the information and stated that it would consider sending an unredacted version based upon the Fund's response. (*See* Gerano Aff. ¶ 3 and Exhibit A attached thereto, attached as Exhibit 2.) Sofco never received any further communication on the issue, so it did not produce the unredacted version during discovery. (Gerano Aff. ¶ 4.) However, to the extent the information is relevant, Sofco provided a full and unredacted version as an exhibit to its motion for summary judgment.

for its contribution history.").[6] The Fund's inclusion of the predecessor's contribution history was error as a matter of law. The Arbitrator should reduce the Fund's withdrawal liability assessment accordingly.[7]

## IV. CONCLUSION

For each and every one of the foregoing reasons, and the reasons set forth in Sofco's Memorandum in Support of its Motion for Summary Judgment, Sofco Erectors, Inc. respectfully requests the Arbitrator deny the Fund's Motion for Summary Judgment and grant Sofco's Motion for Summary Judgment, set aside the Fund's Withdrawal Liability Assessments and order the Fund to return Sofco's quarterly payments, with interest, and award Sofco its attorneys' fees and costs in this matter.

Respectfully submitted,
*/s/ Gary L. Greenberg*
Gary L. Greenberg
Mark B. Gerano
Jackson Lewis P.C.
425 Walnut Street, Suite 2300
Cincinnati, OH 45202
(513) 873-2103
Gary.Greenberg@jacksonlewis.com
Mark.Gerano@jacksonlewis.com

*Attorneys for Sofco Erectors, Inc.*

---

[6] Here, the seller, Old Sofco, went out of business, so it incurred no withdrawal liability. (Gates Sept. 11, 2018 Aff. ¶ 6.)

[7] When the predecessor's contribution history is excluded, the Preliminary Allocable Amount of Unfunded Vested Benefits reduces from $605,591 to $451,061 (after eliminating partial withdrawal liability). (*See* September 7, 2018 Report of Michael Libman, attached as Ex. E to Sofco's Motion for Summary Judgment.) If the Arbitrator finds it was inappropriate to include the predecessor's contribution history, the Arbitrator should order the Fund to recompute any withdrawal liability assessment accordingly. Of course, if the Arbitrator grants summary judgment to Sofco as to the validity of the complete and partial withdrawal assessments, the Arbitrator need not address this issue.

14

## CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of March, 2019, a true and accurate copy of the

foregoing was served upon the following via email:

Daniel J. Clark
Vorys, Sater, Seymour and Pease LLP
52 East Gay Street
P.O. Box 1008
Columbus, OH 43216-1008
djclark@vorys.com

and

Allen S. Kinzer
Vorys, Sater, Seymour and Pease LLP
52 East Gay Street
P.O. Box 1008
Columbus, OH 43216-1008
askinzer@vorys.com

*Attorneys for the Ohio Operating Engineers Pension Fund*

*/s Gary L. Greenberg*
Gary L. Greenberg

4847-8299-7641, v. 1

15

AMERICAN ARBITRATION ASSOCIATION

SOFCO ERECTORS, INC.        :   Case No: 01-18-0001-3790
                                   :   JS Case No. 4510
        "Employer"               :
                                     :
        And                        :
                                     :   **AFFIDAVIT OF JOHN HESFORD**
                                     :
OHIO OPERATING ENGINEERS     :
PENSION FUND                        :
                                     :
        "Fund"                    :
                                     :
                                     :

STATE OF OHIO              )
                            ) SS:
COUNTY OF HAMILTON     )

John Hesford, being first duly sworn, deposes and says that:

1. I am John Hesford. I am over the age of 18, and I am competent to testify to the matters set forth herein.

2. Sofco also employs individuals to perform shop work. Shop duties are performed on or out of Sofco's facilities, and include cleaning, organizing, making deliveries, maintaining equipment, or any other duties management assigns.

3. Since Sofco's inception in 2004, more than 75% of the hours of shop work that have been performed have been performed by individuals other than Local 18 members.

4. Sofco never sought out Local 18 members to perform shop work because the work was within Local 18's jurisdiction or because it wanted a Local 18 member to perform the work, rather Sofco identified individuals that were good workers and employed them to do the work, regardless of which union card (if any) they carried.

5. In the mid to late 2000's, the crane contractors began to stop renting cranes "bare" (unoperated). They required their cranes be run by their employees who were Local 18 members. By 2015, all rented cranes were operated by the crane contractors. Sofco continued to operate its own cranes until 2016 with Local 18 members. Now, all crane work within Local 18's geographic jurisdiction is subcontracted to companies that



employ Local 18 members to operate the cranes. A portion of the decline in contributions during the years in question was due to the fact that Sofco subcontracted crane work to companies that employed Local 18 members.

FURTHER AFFIANT SAYETH NAUGHT.

John Hesford

Sworn and subscribed to before me this 1st day of March, 2019.

Notary public: _____

My commission expires: _____

4818-4383-7065, v. 1

CAROLINE JEAN RILEY
NOTARY PUBLIC
IN AND FOR THE
STATE OF OHIO
MY COMMISSION EXPIRES
NOVEMBER 1, 2020

AMERICAN ARBITRATION ASSOCIATION

| | |
|---|---|
| SOFCO ERECTORS, INC. | : Case No: 01-18-0001-3790 |
| | : JS Case No. 4510 |
| "Employer" | : |
| | : |
| And | : |
| | : **AFFIDAVIT OF MARK GERANO** |
| | : |
| OHIO OPERATING ENGINEERS | : |
| PENSION FUND | : |
| | : |
| "Fund" | : |
| | : |
| | : |

STATE OF OHIO      )

                   ) SS:

COUNTY OF HAMILTON   )

      Mark Gerano, being first duly sworn, deposes and says that:

1. I am Mark Gerano. I am over the age of 18, and I am competent to testify to the matters set forth herein.

2. I am co-counsel for Sofco Erectors, Inc. in the above-captioned matter.

3. Attached as Exhibit A is a true and accurate copy of a letter I sent to the Fund's counsel on November 21, 2018.

4. The Fund never provided any explanation as to why it needed the unredacted asset purchase agreement in response to my November 21, 2018 letter.


      FURTHER AFFIANT SAYETH NAUGHT.

                                        _____
                                        Mark Gerano

Sworn and subscribed to before me this 1st day of March, 2019.

Notary public: _____

My commission expires: _____

4850-3491-5977, v. 1

LINDA RAE BACK
Notary Public, State of Ohio
My Commission Expires 06-22-2023

EXHIBIT
2
ALL-STATE LEGAL®

Representing Management Exclusively in Workplace Law and Related Litigation



| | | | |
|---|---|---|---|
| **Jackson Lewis P.C.** | ALBANY NY | GREENVILLE SC | MONMOUTH COUNTY | RALEIGH NC |
| **PNC Center** | ALBUQUERQUE NM | HARTFORD CT | NJ | RAPID CITY SD |
| **201 E. Fifth Street** | ATLANTA GA | HONOLULU HI* | MORRISTOWN NJ | RICHMOND VA |
| **26th Floor** | AUSTIN TX | HOUSTON TX | NEW ORLEANS LA | SACRAMENTO CA |
| **Cincinnati OH 45202** | BALTIMORE MD | INDIANAPOLIS IN | NEW YORK NY | SALT LAKE CITY UT |
| **Tel 513 898-0050** | BIRMINGHAM AL | JACKSONVILLE FL | NORFOLK VA | SAN DIEGO CA |
| **Fax 513 898-0051** | BOSTON MA | KANSAS CITY REGION | OMAHA NE | SAN FRANCISCO CA |
| **www.jacksonlewis.com** | CHICAGO IL | LAS VEGAS NV | ORANGE COUNTY CA | SAN JUAN PR |

(Representing law office header with city listings)

Jackson Lewis P.C.
PNC Center
201 E. Fifth Street
26th Floor
Cincinnati OH 45202
Tel 513 898-0050
Fax 513 898-0051
www.jacksonlewis.com

ALBANY NY · ALBUQUERQUE NM · ATLANTA GA · AUSTIN TX · BALTIMORE MD · BIRMINGHAM AL · BOSTON MA · CHICAGO IL · CINCINNATI OH · CLEVELAND OH · DALLAS TX · DAYTON OH · DENVER CO · DETROIT MI · GRAND RAPIDS

GREENVILLE SC · HARTFORD CT · HONOLULU HI* · HOUSTON TX · INDIANAPOLIS IN · JACKSONVILLE FL · KANSAS CITY REGION · LAS VEGAS NV · LONG ISLAND NY · LOS ANGELES CA · MADISON, WI · MEMPHIS TN · MIAMI FL · MILWAUKEE WI · MINNEAPOLIS MN

MONMOUTH COUNTY NJ · MORRISTOWN NJ · NEW ORLEANS LA · NEW YORK NY · NORFOLK VA · OMAHA NE · ORANGE COUNTY CA · ORLANDO FL · PHILADELPHIA PA · PHOENIX AZ · PITTSBURGH PA · PORTLAND OR · PORTSMOUTH NH · PROVIDENCE RI

RALEIGH NC · RAPID CITY SD · RICHMOND VA · SACRAMENTO CA · SALT LAKE CITY UT · SAN DIEGO CA · SAN FRANCISCO CA · SAN JUAN PR · SEATTLE WA · ST. LOUIS MO · STAMFORD CT · TAMPA FL · WASHINGTON DC REGION · WHITE PLAINS NY

*through an affiliation with Jackson Lewis P.C., a Law Corporation

MY DIRECT DIAL IS: 513.719.5701
MY EMAIL ADDRESS IS: MARK.GERANO@JACKSONLEWIS.COM

November 21, 2018

**VIA U.S. MAIL AND E-MAIL**
Daniel J. Clark
Vorys, Sater, Seymour and Pease LLP
52 East Gay Street
P.O. Box 1008
Columbus, OH 43216-1008
djclark@vorys.com

Re:   Sofco Erectors, Inc./Ohio Operating Engineers Pension Fund
      AAA Case No. 01-18-0001-3790
      JS Case No. 4510

Dear Dan:

This letter responds to your letter dated November 20, 2018.

You asked why Sofco believes the Segal reports from 2003-2007 are relevant. The Fund's actuary, Mr. Ciner, testified that when the unfunded liability reaches zero, "pools" of unfunded liability from prior years still remain. (Ciner Dep. 45.) He testified those pools can be eliminated slowly over time. Sofco's actuary, Mr. Libman, has explained that in order to make the calculations using Mr. Ciner's methodology, he needs the Segal reports from 2003-2007. Please produce the reports.

Next, Sofco disagrees with your characterization of its Amendment to its Supplemental Request for Review. Your letter indicates the document purports to be a "supplemental request for review." It is not. The document makes a simple amendment to Sofco's supplemental request for review to correct a document that contained inaccurate factual information about Southern Ohio Fabricators, Inc.'s shareholders. When Sofco noticed Jim Ludwig and Tim Gates were listed as shareholders it knew the document was incorrect. Since then, Sofco has provided sworn testimony from both Gates and Ludwig confirming that neither ever owned shares in Southern Ohio Fabricators, Inc. The document was not, as you suggest, a "false document." It contained incorrect information that Sofco overlooked initially, and immediately upon learning about the incorrect information Sofco corrected it.

Your letter requests an unredacted version of the asset purchase agreement. Please provide an explanation as to why the Fund requests an unredacted copy of the asset purchase agreement. Upon

EXHIBIT

A

ALL-STATE LEGAL®


**jackson lewis**
Attorneys at Law

Daniel J. Clark
Vorys, Sater, Seymour and Pease LLP
November 21, 2018
Page 2

receiving the Fund's reasons for why it needs to review the redacted information, Sofco will evaluate whether to produce it. As it stands, Sofco believes the document as it was produced contains sufficient information.

Next, Keating Muething & Klekamp ("KMK") may have information regarding Southern Ohio Fabricators, Inc.'s records. Sofco believes that firm formerly represented Southern Ohio Fabricators, Inc. KMK has never represented Sofco. Moreover, although your letter suggests Sofco may have possession of records from Southern Ohio Fabricators, Inc., it does not. Sofco purchased the books and records of its predecessor, Sofco Erectors, Inc., not Southern Ohio Fabricators, Inc. Regarding the documents Sofco does possess, we believe Sofco produced all documents responsive to the Fund's discovery requests. In an abundance of caution and to ensure all responsive documents are produced, Sofco will make an additional search for responsive documents and will produce any responsive documents it locates that it has not already produced.

Next, Sofco declines the Fund's invitation to abandon its argument that its predecessor's contribution history should not be considered. Sofco maintains it is inappropriate to consider its predecessor's contribution history.

Lastly, we agree in principle to your suggested schedule change. We believe a slight delay in the hearing date may be necessary if we continue discovery through the end of December. During our conference call with the Arbitrator we will discuss the dates and reach an agreement.

Sincerely,
JACKSON LEWIS P.C.

Mark B. Gerano

MBG

cc:  Gary Greenberg (via e-mail)
     Allen Kinzer (via e-mail)

4849-1507-0848, v. 1