**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| SOFCO ERECTORS, INC. | : | Case No: 2:19-cv-2238 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Judge George C. Smith |
| | : | |
| TRUSTEES, OHIO OPERATING ENGINEERS PENSION FUND | : | Magistrate Judge Kimberly A. Jolson |
| | : | |
| And | : | **PLAINTIFF SOFCO ERECTORS, INC.'S** |
| | : | **REPLY IN SUPPORT OF ITS MOTION** |
| OHIO OPERATING ENGINEERS PENSION FUND | : | **FOR SUMMARY JUDGMENT** |
| | : | |
| Defendants. | : | |

## I. INTRODUCTION

The Fund's Memorandum in Opposition to Sofco's Motion for Summary Judgment (Doc. 20) proposes an erroneous standard of review; the standard is clearly *de novo*. The Fund also erroneously suggests that multi-employer pension funds have almost unfettered discretion to assess withdrawal liability and to calculate it in whatever manner they wish. Neither the MPPAA nor the United States Constitution allow multi-employer pension funds to assess withdrawal liability or calculate it in the manner in which the Fund did here. For the reasons that follow, and the reasons set forth in Sofco's previous memoranda, Sofco's Motion for Summary Judgment should be granted, and the Arbitrator's Opinion and Award (the "Award") should be vacated or modified accordingly.

## II. LEGAL ARGUMENT

### A. The Fund Unlawfully Calculated the Alleged Withdrawal Liability.

1

> 1. The Fund's use of the Segal Blend to calculate Sofco's withdrawal liability was unlawful.

ERISA mandates that when calculating an "employer's withdrawal liability, 'actuarial assumptions and methods' must, 'in the aggregate, [be] reasonable (taking into account the experience of the plan and reasonable expectations) and which, in combination, offer the actuary's best estimate of anticipated experience under the plan.'" *New York Times Co. v. Newspaper & Mail Deliverers'-Publishers' Pension Fund*, 303 F.Supp. 3d 236, 255 (S.D.N.Y. 2018)(citing 29 U.S.C. § 1393(a)(1)(emphasis added)). The Fund's use of the Segal Blend failed to meet ERISA's requirements that the interest rate assumption be "reasonable, taking into account the experience of the plan and reasonable expectations."

The Fund's actuary did not follow ERISA's mandate when he decided to use the Segal Blend. The actuary first testified how he calculated the interest rate used to determine funding levels: "[a] review of past experience and future expectations taking into account the plan's asset allocation and expected returns." (Ciner Dep. 19:17-19, Doc. 20-1, PageID # 3390.) Based upon this analysis, he determined that 7.25% was reasonable to determine funding levels. Despite this, when the Fund's actuary determined the rate to be used for withdrawal liability—which under ERISA should likewise be based on the plan's past experience and expected returns—he somehow came up with a very different interest rate (and one that benefits the Fund significantly more in the withdrawal liability context): the Segal Blend. Indeed, although he testified that the Segal Blend was his "best estimate," this estimate was clearly not based upon a review of the plan's past experience and future expectations, which it must be under ERISA. (Ciner Dep. 23, Doc. 20-1, PageID # 3394.) Had the actuary considered past experience and future expectations as ERISA requires, and like he did when determining funding levels, he would have reached the same result

that he reached for the funding interest rate. Simply put, the actuary's methodology violates ERISA's requirements.

The Fund argues that its arbitrary use of the Segal Blend here is lawful since PBGC Opinion 86-24 says that the use of multiple interest rates is not *per se* unlawful. (Doc. 20, PageID # 3364-65.) Not so. The PBGC Opinion (which is not legally binding authority on this court) suggests that although different rates might be used for different purposes, the rate for withdrawal liability still must be based upon actuarial assumptions that consider "**the experience of the plan and reasonable expectations**, and which, in combination, offer the actuary's best estimate of anticipated experience under the plan." (*Id.*) The PBGC Opinion further illustrates the problem with the Fund's calculation: the actuary testified that the rate which takes into account the experience of the plan and reasonable expectations is the funding interest rate, not the Segal Blend.

As the district court in *New York Times* explained, merely because the use of the Segal Blend is not *per se* prohibited, that does not mean its application in any individual context is proper. *New York Times Co. v. Newspaper & Mail Deliverers'-Publishers Pension Fund*, 303 F.Supp. 3d 236, 255 (S.D.N.Y. 2018) The court's analysis in *New York Times* is directly on point here. The court stated:

> As detailed above, ERISA requires that when determining an employer's withdrawal liability, "actuarial assumptions and methods" must, "in the aggregate, [be] reasonable (taking into account the experience of the plan and reasonable expectations) and which, in combination, offer the actuary's best estimate of anticipated experience under the plan." 29 U.S.C. § 1393(a)(1) (emphasis added). [The actuary's] testimony before the Arbitrator was that a 7.5% percent assumption was her "best estimate of how the Pension Fund's assets . . . will on average perform over the long term." Arb. Tr. 568:3-8; *see* Arb. Tr. 600:3-15 (observing that the Segal Blend was "lower" than [the actuary's] best estimate of anticipated plan experience in the long term). If 7.5% was the Fund actuary's "best estimate," it strains reason to see how the Segal Blend, a 6.5% rate derived by blending that 7.5% best estimate" assumption with lower, no-risk PBGC bond rates, can be accepted as the anticipated plan experience. This is especially when the blend includes interest rates for assets not included in the Fund's portfolio. The Segal Blend's applicability is further undermined by [the actuary's]

acknowledgment that she had used the Segal Blend as her "best estimate" when calculating withdraw liability "regardless of the particular pension plan's actual portfolio of assets." Arb. Tr. 585:10-586:5.

*Id.*

The facts here are virtually identical, and the result should be the same.

Finally, and as set forth more fully in Sofco's Motion for Summary Judgment, an interpretation of ERISA that would permit the Fund to use the Segal Blend under these circumstances would run afoul of the Fifth Amendment's Due Process Clause. *C.f., Concrete Pipe & Prods. v. Constr. Laborers Pension Trust*, 508 U.S. 602 (1993). The Second Circuit Court of Appeals recently noted the problem with benefit funds artificially inflating withdrawal liability by using two different interest rates: "[t]he opportunity for manipulation and bias is particularly great where funds use different interest rate assumptions for withdrawal liability and minimum funding purposes." *Nat'l Ret. Fund v. Metz Culinary Mgmt.,* 946 F.3d 146, 152, 2020 U.S. App. LEXIS 4, 13-14 (2d Cir. 2020).

Here, the Fund manipulated the interest rate assumption to achieve a biased outcome that is contrary to ERISA and, if ERISA allowed this (which it does not), would violate the Constitution's Fifth Amendment Due Process Clause by delegating arbitrary authority to multi-employer pension funds. Accordingly, the court should vacate or modify the Arbitrator's decision allowing it and order the Fund to recalculate the withdrawal liability using its funding interest rate.

    2. <u>The Fund unlawfully considered Sofco's predecessor's contribution history</u>.

When a company purchases another company's assets, the seller's contribution history in the withdrawal liability context **does not transfer** to the new company, **unless** the transaction was structured under 29 U.S.C. § 1384, which did not occur here. *CenTra, Inc. v. Cent. States*, 578 F.3d 592, 601-02 (7th Cir. 2009); *Richland Industries, Ltd. v. Robbins*, 617 F.Supp. 639, 644 (N.D.

4

Ill. 1985)("Section 1384 (in tandem with Section 1383(a)) establishes that an arms' length sale of assets normally occasions a complete withdrawal from the plan by the seller. That subjects the seller to full withdrawal liability. And the purchaser undertakes no liability at all for the seller's contribution history, unless the purchaser posts a special bond and the seller agrees contractually to assume secondary liability for its contribution history."). This is the law under ERISA. The Fund does not dispute the law; instead, it asks this Court to ignore the statute and extend the common-law successorship doctrine to cover multi-employer pension plan withdrawal liability calculations. The Court should decline the Fund's invitation.

The Fund cites *PBGC v. Findlay Indus*. in support of its argument that although ERISA's requirements do not bind Sofco, common-law successorship rules bind Sofco to its predecessor's contribution history. *See* 902 F.3d 597, 611 (6th Cir. 2018). In *Findlay*, the Sixth Circuit created a narrow federal common law use of the successorship doctrine in the context of a non-construction industry, single-employer pension plan. Because the *Findlay* case did not involve either a construction industry employer (like Sofco), or a multi-employer pension plan (like the Fund), so it is not controlling here.

Moreover, the principles under which the Court applied the successorship doctrine in *Findlay* are not relevant in the construction-industry context. In *Findlay* the court used the equitable successorship doctrine to assess liability upon an asset purchaser that attempted to avoid paying pension liabilities by setting up a "clever financial transaction to evade the technical requirements of ERISA and, thus, escape any liability." *Findlay*, 902 F.3d 597, 611 (6th Cir. 2018). This simply is not a concern in the construction industry or in this case. In the construction industry, if a withdrawing employer ceases having an obligation to contribute, it owes no withdrawal liability unless it resumes performing work in the same jurisdiction within five years.

5

29 U.S.C. § 1383(b). This is because of the transitory nature of construction contracts and employment. Individuals in construction trades routinely work for many employers during their careers, and employers come and go; as long as the base of construction projects in the area covered by the plan is funding the plan's obligations, the plan is not threated, so the withdrawing employer is not assessed withdrawal liability. *See Carpenters Pension Trust Fund v. Underground Constr. Co.*, 31 F.3d 776, 778 (9th Cir. 1994)(citing H.R. Rep. No. 869, 96th Cong., 2d Sess. 75-76 (1980)).

The policy underlying the construction industry exception illustrates why the successorship analysis should not be extended in this context. Here, had Sofco's predecessor not sold its assets and simply closed up shop, the predecessor would have owed no withdrawal liability (unless it resumed work within five years). The predecessor sold its assets to Sofco and went out of business; Sofco picked up where that employer left off and began contributing. Because the predecessor owed no withdrawal liability, the Fund loses nothing by excluding the predecessor's contributions.

There is no reason for the Court to create new federal common law that would obligate Sofco to pay withdrawal liability based on its predecessor's history. Accordingly, the Court should vacate or modify the Arbitrator's decision with respect to the contribution history and order the Fund to recalculate any withdrawal liability based upon only Sofco's own contribution history.

**B. The Fund Improperly Assessed Withdrawal Liability.**

1. <u>The Arbitrator's Award affirming the complete withdrawal liability assessment was based on an erroneous conclusion that the Local 18 CBA required contributions to the Fund for forklift work</u>.

The Arbitrator erroneously determined that Sofco continued performing work in Local 18's jurisdiction for which contributions were previously required after it terminated the Local 18.

First, the Arbitrator ignored a key legal issue: contributions to the Fund were never **required** for forklift work that Sofco assigned to members of Ironworkers or shop work it assigned

to other individuals.[1]  As to the work assigned to Ironworkers, the Fund must show that the Local 18 CBA "required contributions for work [also] within the jurisdiction of another union" (i.e. work it voluntarily assigned to Ironworkers).  *Stevens Eng'rs & Constructors, Inc. v. Local 17 Ironworkers Pension Fund*, 877 F.3d 663, 670-71 (6th Cir. 2017).  At best, the Fund can show overlapping jurisdiction, but it cannot demonstrate that contributions were required for the work assigned to Ironworkers, which is required to trigger a withdrawal liability obligation.  *See Stevens Eng'rs & Constructors, Inc. v. Iron Workers Local 17 Pension Fund*, 2016 U.S. Dist. LEXIS 114028, *55 (N.D. Ohio 2016)("since the work at issue was assigned to [the competing union] it is not work for which contributions had ever been required to the Fund.  It follows that the Fund may not assess withdrawal liability based upon work which is not within its jurisdiction and for which contribution to the Fund had never been required.").

Moreover, the Fund waived its right to the forklift work by acquiescing to Sofco's continuous decision to assign such work to Ironworkers.  The Fund's contention (and the Arbitrator's conclusion) that the Fund cannot be bound by Local 18's actions is incorrect as a matter of law.  (*See* Fund's Mem. in Opp. p. 11, Doc. 20, PageID # 3356.)  A union's waiver of a substantive obligation to contribute forecloses a pension plan's right to later assess withdrawal liability.  The case the Fund cites in support of its argument to the contrary—*G. & W Constr. Co.*—dealt with a collection action under ERISA § 515, not with a withdrawal liability action.  *See* 783 F.3d 1045, 1051-1053 (6th Cir. 2015).  The court in *Stevens* explained that ERISA collection cases (like the one the Fund cites) which suggest "that plan sponsors are not subject to estoppel or waiver based upon union action" are distinguishable from withdrawal liability actions because those cases,

---

[1] The section of the Fund's memorandum in opposition regarding complete withdrawal liability does not address Sofco's argument regarding shop work, therefore the Fund apparently concedes that shop work could not form the basis for a complete withdrawal liability assessment.

unlike withdrawal liability cases, do not involve questions as to whether substantive liability to contribute exists.  *Stevens*, 877 F.3d 663, 674 (6th Cir. 2017); *see also Stevens Eng'rs & Constructors, Inc. v. Iron Workers Local 17 Pension Fund*, 2016 U.S. Dist. LEXIS 114028, *49 (N.D. Ohio 2016)("there is no precedent to permitting the application of § 515 in withdrawal liability cases").  Here, Local 18 repeatedly and consistently acquiesced to Sofco's decision to assign forklift work to Ironworkers, and therefore the Fund cannot now claim that continuing to assign such work gives rise to withdrawal liability.

Because forklift work was consistently assigned to Ironworkers, that work was never within the mandatory jurisdiction of Local 18.  Even if it was, Local 18 waived any right to the work when it acquiesced to Sofco's repeated assignment of such work to Ironworkers.  Accordingly, when Sofco continued assigning forklift work to Ironworkers after its obligation to contribute to the Fund ended, Sofco was not performing work for which contributions to the Fund were previously required, and therefore, there is no complete withdrawal.  The Court should vacate or modify the Arbitrator's award affirming the complete withdrawal liability assessment.

> 2. The Arbitrator's Award affirming the partial withdrawal liability assessment was based on an erroneous interpretation of the statute's requirement that contributions become "insubstantial."

Under 29 U.S.C. § 1388(d)(1), a construction industry employer is only liable for partial withdrawal "if the employer's obligation to contribute under the plan is continued for no more than an *insubstantial portion* of its work in the craft and area jurisdiction of the collective bargaining agreement of the type for which contributions are required."  The Fund argues that because Congress has not defined the term "insubstantial," the Fund can determine what it means on a case-by-case basis.

8

The Arbitrator held that Sofco's contributions were "insubstantial" without defining the term except to say it means something between 5% and 30%. (Opinion and Award, p. 4, Doc. 13-5, PageID # 2739.)  It is incomprehensible how the Arbitrator could have determined that contributions were insubstantial without ever explaining how he reached such a conclusion. Indeed, using the Arbitrator's own reasoning (that "insubstantial" means something between 5% and 30%), Sofco's reduced contributions (ranging from 4% to 18%) could have been more than insubstantial and therefore not serve as the basis for a partial withdrawal liability assessment.

Insubstantial must mean something.  Absent a clear definition for insubstantial, multi-employer pension funds would be free to pick and choose when to assess partial withdrawal liability on a whim, as long as (according to the Fund) the reduced contributions are less than 30%. Such interpretation would violate the constitution; ERISA was not designed to give benefit funds unfettered discretion to pick and choose when to assess withdrawal liability. *See Concrete Pipe & Prods. v. Constr. Laborers Pension Trust*, 508 U.S. 602, 626 (1993).  Because the Arbitrator's interpretation of the statute was clear error, and because under the best definition of insubstantial (2% - *see* Sofco's motion for summary judgment), there was no partial withdrawal, the Court should vacate or modify that portion of the Arbitrator's award.

### III.    CONCLUSION

For all of the foregoing reasons, Sofco Erectors, Inc. respectfully requests that the Court grant its Motion for Summary Judgment, vacate or modify the Arbitrator's order affirming the Fund's withdrawal liability assessment, order the Fund to return all money Sofco paid the Fund, with interest, and award Sofco its fees and costs in this matter.

Respectfully Submitted,

*/s/ Gary L. Greenberg*
Gary L. Greenberg (0023180)
Trial Attorney
Mark B. Gerano (0091969)
Jackson Lewis P.C.
201 E. Fifth Street, 26th Floor
Cincinnati, Ohio 45202
(513) 898-0050
(513) 898-0051 (fax)
Gary.Greenberg@jacksonlewis.com
Mark.Gerano@jacksonlewis.com

*Attorneys for Sofco Erectors, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on March 13, 2020, the foregoing was electronically filed via the Court's CM/ECF system, which will send electronic notification to all counsel of record.

*/s/ Gary L. Greenberg*
Gary L. Greenberg

4850-2699-2566, v. 1